JOHN F. SMYTH, Superintendent, etc., Respondent, *v.* JULIA T. MUNROE et al., Appellants.

Where the superintendent of the insurance department has accepted from an insurance company an assignment of a mortgage as a part of the deposit to be made with him, under the requirements of the insurance law, on the faith of a representation on the part of the mortgagor that there is no legal or equitable defense to the same, he can avail himself of the doctrine of estoppel prohibiting a debtor, upon the faith of whose statements an assignment of his obligation has been accepted, from disputing such statements.

Defendant A. executed to an insurance company his bond for $40,000, secured by mortgage executed by him and by defendant J., his wife, upon lands owned by the latter. At the same time the mortgagors signed a written instrument in which they consented to the assignment of the mortgage to the superintendent of the insurance department, and stated that no portion of the mortgage debt had been paid and that there was "no offset to or legal or equitable defense to the same." The insurance company became insolvent and a receiver of its effects was appointed. In an action by the superintendent to foreclose the mortgage, wherein the defense of usury was interposed, it appeared that it was the custom of the insurance department to require such statements as a condition precedent to the acceptance of assignments of mortgages, and that the instrument was taken and deposited with the other papers in the office of the superintendent. *Held*, that it was to be presumed that the superintendent acted in accepting the assignment, and as an essential part of the transaction, upon the faith of the representations in said instrument; that, therefore, a finding to that effect was justified; and that defendants were estopped from availing themselves of said defense.

Also *held*, that in the absence of proof of fraud, or want of knowledge, it was a legal presumption that the parties executing said instrument did so with knowledge of its contents; and that this presumption was not affected by the fact that one of them was a married woman; also, that as against a person who had acted upon the faith of her representation she could not be exonerated therefrom by reason of her ignorance.

Also *held*, that knowledge on the part of the insurance company of the usury could not be attributed to and did not affect the superintendent.

Also *held*, that evidence was competent showing the custom of the department in such transactions.

(Argued February 8, 1881 ; decided March 1, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order

made January 6, 1880, which affirmed a judgment in favor of plaintiff, entered upon a . decision of the court, on trial at Special Term.   (Reported below, 19 Hun, 550.)

This action was brought by plaintiff, as superintendent of the insurance department of the State of New York, to foreclose a mortgage executed by defendants, Allen Munroe and Julia T., his wife, upon lands owned by the latter, given to secure a bond of the former.

The bond and mortgage were executed to the New York State Life Insurance Company, to secure the sum of $40,000 loaned to Allen Munroe.  Mrs. Munroe and Belden, the assignee in bankruptcy of Allen Munroe, were the only parties who answered the complaint; they severally set up the defense of usury.  The mortgage was on the day of its execution, transferred and assigned by the life insurance company, unto Orlow W. Chapman, the predecessor in office of the plaintiff as such superintendent, and in consideration of such transfer the company received from the superintendent $40,000 in government bonds, which had theretofore been deposited in the insurance department as security to the policy-holders in pursuance of law.

Simultaneously with the execution of the said bond and mortgage the said Allen and Julia T. Munroe executed an instrument as follows :

"The undersigned, mortgagor or mortgagors in the mortgage above mentioned and the present owner or owners in fee of the mortgaged premises, do hereby consent to the assignment of said bond and mortgage to the superintendent of the insurance department of the State of New York, and do hereby certify and agree that there is now unpaid and due, or to become due, on said bond and mortgage the principal sum of $40,000 with interest thereon from the 12th day of December, 1873, and there is no offset to or legal or equitable defense against the same.

"Dated this 12th day of December, 1873.

"ALLEN MUNROE,

"JULIA TOWNSEND MUNROE."

Which instrument was duly acknowledged. This instrument, with the acknowledgment thereof, appeared upon the same paper upon which the assignment from the insurance company to the superintendent of the insurance department was written or printed.

It appeared that it was the custom of the insurance department to require statements similar to those contained in said instrument before accepting assignments of mortgages. All of the papers were delivered together to and were filed in the insurance department.

The counsel for the defendants requested the court to find the facts constituting the usury, which the court refused; also, that the superintendent of the insurance department did not rely upon the statement in the certificate contained and was not influenced thereby in taking the assignment of the bond and mortgage and in paying therefor; also, that the said superintendent at the time he took the assignment of the said bond and mortgage was informed, or had sufficient knowledge to put him upon inquiry, of the true consideration upon which the bond and mortgage had been made to the life insurance company. The court refused to find either of said propositions as requested; on the contrary, found that the superintendent accepted the bond and mortgage and delivered the United States bonds in exchange, relying upon the truth of the statement contained in said instrument.

Among other findings of fact, the court did find: "That at the time the said Julia T. Munroe executed the said certificate she had no knowledge of the purpose for which it was required, or that it was to be used in any manner whatever, and that in the absence of such knowledge she signed the same at the request of her said husband and without any knowledge or information of the use which was to be made of the same."

Mrs. Munroe was not examined as a witness, and no evidence was given to support this finding.

Further facts appear in the opinion.

*George N. Kennedy* for appellant. The bond and mortgage

was as to the defendants James J. Belden, assignee in bankruptcy of Allen Munroe, and Julia T. Munroe, usurious and void. (*Rose* v. *Rose*, 7 Barb. 176; *Souverlye* v. *Arden*, 1 Johns. Ch. 240.) The mortgage and bond being void for usury, defendants can avail themselves of the defense against the plaintiff as assignee of said security, and were not estopped by the certificate given by them at the same time, and concurrent with the execution of the mortgage. (*De Zell* v. *Odell*, 3 Hill, 222; *Plumb* v. *Cattaraugus Ins. Co.*, 18 N. Y. 395; *Truscott* v. *Davis*, 4 Barb. 495-8; *Dinkenfiel* v. *Franklin*, 7 Hun, 340; *Mallory* v. *Heran*, 49 N. Y. 111; *Payne* v. *Burnham*, 62 id. 69; 7 T. R. 604; *Lowesbury* v. *Depue*, 28 Barb. 47.) It is not sufficient to create an estoppel that the certificate was believed to be a protection as matter of law. (*Wilcox* v. *Howell*, 44 N. Y. 399; 38 N. Y. Super. Ct. 7; *Mallory* v. *Horan*, 49 N.Y. 111, 115.) The certificate having been executed at the same time and concurrent with the execution of the mortgage, and being a part of the same transaction, it can have no other or greater effect than it would have had if it had been written in the body of the mortgage. (*Wilcox* v. *Howell*, 44 Barb. 401; 44 N. Y. 398; *Mechanics' Bank* v. *New Haven R. R. Co.*, 3 Kern. 638.) An indispensable requisite of an estoppel *in pais* is that the conduct or representations were intended to, and did in part, influence the other party to his injury. (*Payne* v. *Burnham*, 62 N. Y. 69, 73.) The plaintiff cannot avail himself of the doctrine of estoppel against the mortgagor by reason of his relations of trustee to the mortgagee. (*People ex rel. Stout* v. *Chapman*, 5 Hun, 222, 224; *Ruggles* v. *Chapman*, 59 N. Y. 165; *Sharpley* v. *Abbott*, 42 id. 450-1; *Flagg* v. *Munger*, 5 Seld. 492.)

*R. W. Peckham* for respondent. There was no usury proved in the case on the part of the New York Life Insurance Company, or for which it was in any way liable. (*Adriance* v. *Roome*, 52 Barb. 399; *Ins. Co.* v. *Ins. Co.*, 7 Wend. 31; *Risley* v. *Railway Co.*, 1 Hun, 202; *Brouwer* v. *Appleby*, 1 Sandf. 158; *Hoyt* v. *Thompson*, 5 N. Y. 320; *Bank* v. *Norton*, 1

Hill, 572, 579; *Bank* v. *Bank*, 17 Mass. 1, 28; Angell & Ames on Corporations [4th ed.], §§ 291–297; *Sniffen* v. *Koechling*, 13 J. & S. 61; *Estevey* v. *Purdy*, 66 N. Y. 446; *Bank* v. *Railroad*, 13 id. 599, 631, 633, 634; *Clark* v. *Metropolitan Bank*, 3 Duer, 241; *Thompson* v. *Bank*, 5 Bosw. 293, 309; *Walsh* v. *Ins. Co.*, 73 N. Y. 5, 10; *Ins. Co.* v. *Minch*, 53 id. 144; L. R., 15 Ch. Div. 639–643; *Buffett* v. *Railroad Company*, 40 N. Y. 168.) An action to foreclose the mortgage could have been maintained by the insurance company itself. (*Condit* v. *Baldwin*, 21 N. Y. 219; *Bell* v. *Day*, 32 id. 165; *Lee* v. *Chadsey*, 3 Abb. Ct. App. Dec. 43; *Estevey* v. *Purdy*, 66 N. Y. 446; *Sniffen* v. *Koechling*, 13 J. & S. 61.) Assuming the existence of usury in the mortgage, rendering it invalid in the hands of the Insurance Company the certificates signed by defendants Munroe, and the facts found by the court based upon it, estop the defendants from raising the question of usury. (*Mason* v. *Anthony*, 3 Abb. Ct. of App. Dec. 207; *S. C.*, 3 Keyes, 609; *Payne* v. *Burnham*, 62 N. Y. 69; *Nichols* v. *Nussbaum*, 10 Hun, 214; *Smythe* v. *Lombardo*, 15 id. 415.) There is no presumption of law in civil cases that a married woman acts under the compulsion of her husband in any thing. (*Seiler* v. *The People*, 77 N. Y. 411.) There is no such relation between plaintiff and the Insurance Company as to prevent the doctrine of estoppel from being applied herein. (*Ruggles* v. *Chapman*, 59 N. Y. 163; 64 id. 557; *Matter of Att'y-Gen.* v. *Guardian Mutual Life Ins. Co.*, 13 Hun, 115; 74 N. Y. 617; *Stilwell* v. *Carpenter*, 62 id. 639.) Knowledge in the company of the existence of usury would have no bearing upon the superintendent as against the certificate, even though it should be claimed that the superintendent is also the trustee for the company and the company had knowledge of the facts. (Laws of 1853, chap. 463, as amended; Laws of 1862, chap. 300, § 2.) There being no usury, a refusal to find upon the question one way or the other was immaterial. (*Stewart* v. *Morss*, 79 N. Y. 629.) Belden, as assignee, could not set up the

defense of usury against the certificate of his assignor. (*Curtis* v. *Leavitt,* 15 N. Y. 1; *Van Heusen* v. *Radcliffe,* 7 id. 580.)

MILLER, J. The principle is well established in this State that where an assignee takes a chose in action by assignment, with the debtor's assent, and on the faith of a representation made at the time, the debtor is estopped from impeaching it by any defense inconsistent with his declaration. And it is adjudged, by repeated decisions of this court, that the doctrine of an estoppel *in pais* may be interposed in such a case against the defense of usury. (*D'Amoreux* v. *Vischer,* 2 Comst. 278; *Mason* v. *Anthony,* 3 Keyes, 609; *Payne* v. *Burnham,* 62 N. Y. 69.) The statement in the certificate of Allen Munroe and Julia T., his wife, to the effect that to the bonds and mortgage therein mentioned, the last of which is the subject of foreclosure in this action, there was no legal or equitable defense, was evidently made for the purpose of inducing a belief that such statement was true. And if the bond and mortgage was received upon the strength and by reason of such statement and certificate, no valid reason exists why the parties who made the same, and all persons claiming under them, are not estopped from urging to the contrary, or asserting that the representation is untrue and different from the fact actually existing. It appears, in this case, that, at the time and concurrent with the execution of the bond and mortgage, an instrument was executed by the mortgagors consenting to the assignment of the same to the superintendent of the insurance department of this State, and that the papers were taken and deposited with said superintendent, and the findings of the court show that the bond and mortgage was received by him relying upon the truth of the statements contained in the certificate. The presumption of law, in view of the purpose for which the bond and mortgage was assigned and the fact that it was received, in accordance with the customary routine of business of that department, is that ordinary caution was used, and the proof shows that it was the practice to require a certificate of the same tenor and effect in all transactions of a like character. In fact, such

a course was indispensable to the safety and security of those for whose benefit bonds and mortgages might be assigned; and a public official, having charge of securities of this description, would be delinquent in the performance of his duty and as a business man who failed to exact proof that the obligation received was valid and legal and not tainted by a usurious consideration. Taking into account that the official duty of the officer absolutely required this degree of vigilance and care, as well as ordinary business rules, and the presumption, which is always to be indulged, that a public officer acts in good faith until the contrary is proved, it must be assumed that the representation made by the certificate was a very important and essential part of the transaction, as well as an inducing cause for taking the bond and mortgage; and without this, the superintendent would never have parted with the bond in his possession of the same amount and of equal value. The claim, therefore, that there is no evidence that the certificate was ever shown to, or seen by, the assignee or superintendent, or that he had heard of its existence at the time of the assignment, is not well founded. The evidence shows that it was the custom of the department to require, before accepting the assignment of any bond and mortgage, such a certificate; that the certificate with the other papers was carried to the superintendent's office; and to say that it was not looked at, examined and understood, and did not constitute the very essence of the matter, is contrary to all reasonable inferences to be derived from the object in contemplation, and the nature and purpose of the transaction. The evidence relied upon by the appellant's counsel to sustain the position contended for is susceptible of a different construction. A literal reading would make the witness testify to the existence of the certificate of an affidavit of regularity, which is not proved; and as it does not appear that there was any other certificate introduced upon the trial except the one signed by the mortgagors, the fair and reasonable intendment is that the witness included the latter, as well as the affidavit of regularity and that of the appraisers, which are mentioned. This interpretation comports with the usual course of business, and

with the inference to be drawn from the fact that a certificate had been taken, and that it must have been executed for the purposes for which it was used. Although the evidence relating to the custom as to requiring a certificate is contained in a stipulation, yet it was manifestly sufficient to establish such custom and properly admitted upon the trial. The claim that the certificate alone is not sufficient to create an estoppel *in pais,* and that it must be shown that the acts, declarations or omissions, out of which the estoppel arises, influenced the conduct of the superintendent, and that he acted in reliance upon the same, is answered by the remark that it is entirely clear that he would not have taken the assignment of the bond and mortgage and parted with the bonds he held, unless this certificate had been given. It was not only a rule and regulation, but a necessity; and the only way in which he could fully obtain knowledge of the facts, and protect the public against loss by mortgages which were usurious and void. Under these circumstances, it cannot, we think, be questioned, that the superintendent believed and relied upon the statement in the certificate as true, and that his action was dictated thereby, within the principle of the decisions cited by the appellant's counsel. (See *Malloney* v. *Horan,* 49 N. Y. 111; *Wilcox* v. *Howell,* 44 id. 399.)

The fact that Mrs. Munroe was a married woman when the certificate was executed does not aid the defendants; and the finding of the court, to the effect that she had no knowledge of its purpose, and in the absence of such knowledge she signed the same without any knowledge or information of the use which was to be made of it, is adverse to the inferences to be drawn from the certificate itself, and from the circumstances attending the transaction. All of these bear witness that the design was to assign the mortgage to the superintendent, and that this was to be done upon the strength of the statement made as to the validity of the mortgage. It is a presumption of law that a party executing an instrument does so with knowledge of its contents; and as Mrs. Munroe was not examined as a witness, and there is no proof that she did not know its contents, it must be assumed that she did. Without

any proof of fraud or want of knowledge, it certainly would not be safe, or in accordance with any sound principle, to hold that a married woman is exonerated from the statements she has made by reason of her ignorance. In *Payne* v. *Burnham* (*supra*), the doctrine of estoppel in such a case was upheld. So long as she intrusts such a statement in the hands of her husband with power to use it, she makes him her agent and is bound thereby. The finding referred to is not material, as the court also found that Mrs. Munroe was estopped by the certificate from setting up the defense of usury, and this should control. The claim that it was not executed with a view to influence the action of the assignee is in opposition to the finding last stated, which is fully sustained by the evidence. It is clearly evident that it did influence the superintendent; and without the certificate of both the mortgagors the assignment would never have been accepted. Nor is there any valid reason why the plaintiff cannot avail himself of the doctrine of estoppel against the mortgagor. He holds the securities as trustee for the benefit and for the security of the policy-holders, under the act of April 8, 1851. Upon the insolvency of the insurance company and its dissolution and the appointment of a receiver, it is his duty to keep those securities, convert them into money, and distribute the funds among the *cestuis que trust*. (*Ruggles, Receiver*, v. *Chapman*, 59 N. Y. 163; *S. C.*, 64 id. 557; *Matter of Guardian M. L. Ins. Co.*, 13 Hun, 115; 74 N. Y. 617.)

At the time of the commencement of this action the New York State Life and Trust Company, to whom the mortgage was executed, was insolvent, as the records of this court show, and a receiver appointed to take charge of its effects, and to wind up its affairs. Under the circumstances, the knowledge of the company of the existence of the usury could not well be imputed to the superintendent.

But aside from this view, under the statute, by virtue of which the superintendent holds the securities, he is primarily a trustee for the policy-holders. (Sess. L. of 1853, chap. 463, as amended by Sess. L. of 1862, chap. 300, § 2.) The inten-

tion of the law evidently was to place these securities beyond the reach of the company until the policy-holders are fully satisfied, and the superintendent could not be chargeable with the knowledge of the company that usury had been taken, even if the proof was clear that such knowledge existed. As already indicated, there was no error in the admission of the evidence contained in the stipulation, and we think that the plaintiff had a right to show the custom of the department in the transaction of business of this description. Nor was there any error in the refusal to find as requested upon the trial, or in the conclusion arrived at, that the defendants were estopped. As the estoppel precluded the defendants from interposing the alleged usury as a defense, it is not necessary to consider whether any usury was proved of which the insurance company had knowledge, or which of itself would defeat the collection of the bond and mortgage.

The judgment was right and should be affirmed.

All concur, except ANDREWS, J., taking no part.

Judgment affirmed.