.CASE 32.—ACTION BY T. K. HELM AGAINST FRANK P.
JAMES AS STATE AUDITOR TO RECOVER A FEE
AS COUNSEL FOR THE STATE UNDER APPOINT-
MENT BY THE GOVERNOR.—June 20.

# James, Auditor, v. Helm

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for plaintiff, defendant appeals — Affirmed.

1. District and Prosecuting Attorneys—Assistants—Appointment
by Governor.—Ky. Stats. 1903, section 118, requires the Com-
monwealth's attorney to prosecute all violations of the crimi-
nal and penal laws within his district, and authorizes the
Governor in civil cases to employ counsel to assist the Com-
monwealth's attorney. Section 127 declares that the county
attorney shall prosecute cases in his county in which the
Commonwealth or the county is interested, aid the Com-
monwealth's attorney, and, in the absence of the acting
Commonwealth's attorney, shall attend to all the Common-
wealth's business in the courts. Section 135 declares that
the county attorney shall not dismiss or control any prose-
cution or proceeding in the circuit court when the Common-
wealth's attorney or the attorney appointed in his place is
present, except by the advice and with the consent of such
attorney. Held that, where the Commonwealth's attorney re-
fused to institute civil proceedings at the suggestion of the
Governor, the Governor had power to employ special counsel
at the expense of the State to assist and co-operate with
the county attorney in the prosecution of such proceedings.
2. Intoxicating Liquors—Wrongful Sale—Sunday—Penalties—
Action—Nature and Form.—Crim. Code Prac., section 11, pro-
vides that a public offense of which the only punishment is
a fine may be prosecuted by a penal action ,in the name
of the Commonwealth or in the name of an individual or

corporation, if the whole fine be given to such individual or corporation, and that the proceedings in penal actions are regulated by the Code of Practice in civil actions, and Civil Code Prac., section 92, declares that, where suit is brought to recover a fine, penalty, or forfeiture imposed by statute, it must be brought in the county where the action or some part of it arose. Held, that an action by the Commonwealth to recover penalties imposed by statute for violation of the law prohibiting the sale of liquors on Sunday was civil, both in form and nature, and this notwithstanding the defendant is entitled to certain privileges and immunities applicable to criminal proceedings not recognized in a civil suit.

JAMES BREATHITT, Attorney General, for Commonwealth.

### POINTS ARGUED AND AUTHORITIES.

1. The general demurrer to the petition as amended should have been sustained. (Sections 115 and 118, Kentucky Statutes.)

2. These were not civil cases under the law and the Governor had no right to employ counsel. (The authority is claimed under section 11, Criminal Code; section 63 Civil Code.) Commonwealth v. Grand Central Bldg. & Loan Assn., &c., 97 Ky., 325; Louisville & Nashville R. R. Co. v. Commonwealth, 112 Ky., 635; Equitable Life Assurance Society of U. S. v. Commonwealth, 113 Ky., 126.)

3. Wrongs are Divisible into two classes or species. (Huntington v. Attrill, 146 U. S., 657, book 36, L. Ed. 1123; People v. Shaw, 13 Ill., 581; Herriman v. Burlington R. R. Co., 57 Iowa, 187; Boyd v. U. S., 116 U. S., 616; Coffey v. U. S., 116 U. S., 436; 29 L. Ed., 689.)

4. Demurrers should have been sustained.

A. P. HUMPHREY and HELM BRUCE for appellee.

### POINTS AND AUTHORITIES.

Right of the Governor to employ special counsel:

1. As an assistant to the county attorney acting as Commonwealth's attorney. "In civil cases the Governor may employ counsel to assist the Commonwealth's attorney." (Kentucky Statutes, section 118.)

2. The county attorney "shall attend to the prosecution of all cases in his county in which the Commonwealth or the county

James, Auditor, v. Helm.

is interested. . . . He shall also attend the circuit courts held in his county, and aid the Commonwealth's attorney in all prosecutions therein, and in the absence of an acting Commonwealth's attorney he shall attend to all the Commonwealth's business in said courts." (Kentucky Statutes, section 127.)

3. The Commonwealth's attorney may be absent either voluntarily or involuntarily, and when absent, the county attorney performs the same duties, and is quo ad the duties performed, the Commonwealth's attorney, and entitled to the same assistance.

4. A declaration by a Commonwealth's attorney to the Governor that as Commonwealth's attorney he does not desire to prosecute penal actions, but is willing for the county attorney to do so, with special counsel appointed for that purpose by the Governor, and if the actions are so brought he will not dismiss the same, accompanied by an actual absence from the common pleas divisions of the Jefferson circuit court, is the equivalent in law of a request for the appointment of special counsel for such purpose, and the absence of the Commonwealth's attorney from court, in law and by his consent devolves his duties upon the county attorney.

5. The powers provided by which the Governor shall perform his constitutional duty of seeing that the laws are faithfully executed are to be liberally construed, as the enforcement of the law is a fundamntal public policy.

## IN CIVIL CASES.

1. "An action on a penal statute to recover money as a penalty is a civil action." "Actions for penalties are civil actions, both in form and substance. . . . The action is founded upon the implied contract that every person enters into with the State to observe its laws." (Commonwealth v. Avery, 14 Bush, 627; Commonwealth v. Sherman, 85 Ky., 688; L. & N. R. R. Co. v. Commonwealth, 112 Ky., 635; U. S. v. B. & C. S.-W. R. R. Co., 158 Fed., —; Blackstone's Commentaries, vol. 2, p. 158; Mitchell v. State, 11 N. W., 448; Brophy v. City of Parth Amboy, 44 N. J. L., 217; Campbell v. Board of Pharmacy, 45 N. J. L., 241; State v. Skillman (Wis.) 98 N. W., 544; Chaflin v. Waukesha, 42 N. W., 732; Durham v. State (Ind.) 19 N. E., 327; Sterns v. U. S. Fed. Case No. 13,341; U. S. v. Elliott, Fed. Case, No. 15,043; Bishop's Criminal Law, sections 32 and 965.)

2. "Undoubtedly the Legislature may authorize a civil action to be maintained for a violation of the penal laws. (Commonwealth

James, Auditor, v. Helm.

v. Avery, 14 Bush, 627; Commonwealth v. Sherman, 85 Ky., 688, and other cases cited under 1.)

3. As early as 1830 this court accepted jurisdiction of cases where the only punishment was a fine, because regarded as civil actions of debt, and the construction that penal actions are civil actions of debt was continuous up to (and since) the adoption of the statute authorizing the Governor to employ special counsel in civil cases; hence the Legislature has by adoption given the Governor discretionary power to employ special counsel in penal actions.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

This litigation grows out of the efforts of Governor J. C. W. Beckham to have the Sunday closing law enforced in the city of Louisville. In the early part of 1906 an effort was made to have the statute, which required all saloons to be kept closed on Sunday, enforced. Prosecutions were instituted in the criminal branch of the Jefferson circuit court and in the police court of the city of Louisville, under section 1903 of the Kentucky Statutes of 1903. Those tried under these prosecutions, upon one ground or another, escaped punishment, and the violations of the Sunday closing law by the saloon keepers continued. In May, 1906, a suit was instituted in this court by Paul Barth, mayor, against John McCann, judge of the city police court, wherein the mayor sought to have the judge of the police court directed by a writ of mandamus to try the violators of the Sunday closing law. This suit resulted in a decision of this court construing section 1303 of the Kentucky Statutes, 1903, which is to be found in 123 Ky. 247, 94 S. W. 645, 29 Ky. Law Rep. 707. For a short time after this opinion was delivered it appears that the saloon keepers observed the law, and the saloons remained closed on Sundays,

but about the 1st of August thereafter many saloon keepers openly refused to observe the law, and kept their places of business open on Sunday, and were guilty of selling liquors on that day as on other days.

It is alleged that evidence of these violations were presented to the grand jury, but no indictments were returned; that when warrants were issued for the offenders, and returned to the police court, the judge thereof held that the Commonwealth must show that the saloon keepers actually sold liquors on Sunday by the evidence of those who drank; that appearances were deceiving, and it was not enough for the prosecuting witness to swear that he saw drinks served which looked like beer, whisky, etc. It also appears that the police judge during this time refused to accept the testimony of police officers or detectives on the ground that they were paid and unworthy of belief. Under this condition of affairs many of the citizens appealed to the Governor for assistance, and, in compliance with their request, the Governor called upon the Commonwealth's attorney and requested him to enforce the law. The Commonwealth's attorney responded that he stood ready and willing to prosecute any saloon keeper for violating the Sunday closing law who might be indicted by the grand jury. As this means of reaching the offenders had proven futile, the Governor urged the Commonwealth's attorney to proceed against the saloon keepers who violated the law under section 11 of the Criminal Code of Practice. This the Commonwealth's attorney declined to do, for the reason that he did not believe this was the proper mode of procedure. Upon being further urged to take this step, he stated that, while he was unwilling to institute penal actions himself against violators of the Sunday closing law, he would

not object to such steps being taken by the county attorney, and that he would not interfere in the event that the county attorney and any special counsel employed by the Governor on behalf of the Commonwealth should proceed against the violators of the Sunday closing law by penal action. Following this announcement on the part of the Commonwealth's attorney, the Governor, at the solicitation of various persons in the city of Louisville interested in the enforcement of the Sunday closing law, selected appellee to assist the county attorney in the preparation and trial of the penal suits against all violators of the Sunday closing law, and entered into the following agreement with him: "That whereas in the opinion of the Governor of Kentucky it is advisable and necessary that special counsel be employed for and on behalf of the Commonwealth of Kentucky to assist the county attorney and other authorities in the enforcement of the State laws relating to Sunday closing of saloons, and other places where spirituous, vinous, or malt liquors are or may be sold on Sundays." "And whereas, the parties of the second part are willing to take such legal action or bring such civil suits as may be found expedient and available to that end, therefore it is agreed that the second party shall diligently and in good faith assist the county attorney and other local authorities in the institution and prosecution of such civil suits as may be necessary to determine the questions involved and such as may appear reasonably necessary to enforce the law, and therefor shall be paid for such service upon the termination of the case or cases the sum of five hundred dollars ($500) in each case until the total payments for such services in all cases that may be brought or prosecuted amounts to four thousand dol-

lars ($4,000). But the fee provided to be paid to the party of the second part shall not exceed four thousand dollars ($4,000) in the aggregate, which amount shall be paid out of the treasury of the State, upon proper warrant.'' This contract was signed by the Governor and by appellee. Thereafter appellee and the county attorney secured evidence against 102 saloon keepers of from two to six violations of the law each, and instituted 11 penal actions in the common pleas branch of the Jefferson circuit court. Each action contained six paragraphs, and each paragraph sought to recover the penal sum of $50. Twelve similar proceedings against other persons, containing from two to four paragraphs, were instituted in the Jefferson quarterly court, and proceedings on notice for a fine and forfeiture of license, and under the law applicable thereto, were instituted against seven hotel keepers in the Jefferson county court, and 35 penal actions, prosecutions by warrants, and on information were instituted in the court of Irvine Hampton, a justice of the peace for Jefferson county, and four warrants were taken out in the city police court in the city of Louisville, making a total of 69 proceedings in court which were instituted by appellee and the county attorney. In some of these proceedings judgments were returned and fines imposed. In the cases in the circuit court the contention of appellee and the county attorney, that the saloon keepers could be proceeded against for keeping open on Sunday without proof of actual sale, was upheld, as was the contention of the county attorney and appellee, that the claims ·of the Commonwealth for different violations could be joined in one suit, upon the ground that these actions were civil in their nature. Two of the common pleas judges held that

they might be joined, while one held to the contrary, but agreed with his associates that the suits were civil, and that, if a separate suit was brought in the quarterly court for each violation, an appeal might be taken from the quarterly court to the circuit court.

These suits in the different courts were prosecuted with so much vigor and zeal that an agreement was reached between the Retail Liquor Dealers' Association, representing the saloon keepers, on the one side, and appellee and the county attorney on the other, whereby the saloon keepers agreed that, if the county attorney and appellee would not further prosecute them, they would cease violating the laws as to Sunday closing. This being the end sought to be accomplished by the Governor and by those citizens of Louisville who were seeking to have the law as to Sunday closing enforced, the agreement made by the Retail Liquor Dealers' Association and the county attorney was approved by the Governor, and the suits were accordingly dismissed. It appears from the pleadings in the case that the agreement on the part of the saloon keepers was faithfully carried out up to the time of the filing of this suit, on the 31st day of January, 1908. On November 15, 1907, appellee presented his claim against the State to the Governor for his fee of $4,000, as per his contract. The claim was approved by the Governor and referred to the Auditor for payment. The Auditor refused payment on the ground that there was no warrant in law for the payment of a claim of this character. Thereafter appellee brought suit against the Auditor in the Franklin circuit court to compel the payment of the fee. The Commonwealth demurred to his petition. The demurrer was overruled. The Commonwealth elected to stand on its demurrer, and de-

clined to plead further. Judgment was entered in favor of appellee for the amount of his claim, to-wit: $4,000, and the Commonwealth appeals.

The value of the services is not questioned, but the Commonwealth insists that the Governor had no authority to make this contract. That the statute does not authorize in any state of case the employ- ment of special counsel to assist the county attorney, but that section 118, under which it is claimed by appellee that authority is given the Governor to make such employment, only authorizes the appointment by the Governor of special counsel to assist the Com- monwealth's attorney in the prosecution of civil cases in the circuit courts in which the Commonwealth is interested. The Commonwealth further contends that, even if the Governor had the right and authority to employ special counsel to assist the county attor- ney where the Commonwealth's attorney declined to proceed, still in the case at bar the employment was not authorized as the suits were not civil cases, but were criminal proceedings. On the question of the Governor's right and power to appoint special counsel to assist the Commonwealth's attorney in the dis- charge of duties which devolve equally upon the county attorney and the Commonwealth's attorney, the following sections of the Kentucky Statutes must be considered. Section 118 provides: "It shall be the duty of the Commonwealth's attorney to attend each circuit court holden in his district and prosecute all violations of the criminal and penal laws therein and discharge all other duties assigned him by law; and he shall also, except in Franklin county, attend to all civil cases and proceedings in the circuit courts of his district in which the Commonwealth is interested, but in civil cases the Governor may employ counsel to

assist the Commonwealth's attorney, the fees of such counsel to be paid out of the State treasury upon a voucher signed by the Governor." Section 127, regulating the duties of the county attorney, provides: "He shall attend to the prosecution of all cases in his county in which the Commonwealth or the county is interested and, when so directed by the county or fiscal court, institute or defend and conduct actions, motions and proceedings of every description before any of the courts of this Commonwealth in which the county is interested, and shall in no instance take a fee or act as counsel in any case in opposition to the interests of the county. He shall also attend the circuit courts held in his county and aid the Commonwealth's attorney in all prosecutions therein, and in the absence of an acting Commonwealth's attorney he shall attend to all the Commonwealth's business in said courts." Section 135 provides: "The county attorney shall not dismiss or otherwise control any prosecution or proceeding in the circuit court when the Commonwealth's attorney or the attorney appointed in his place is present, except by the advice and with the consent of such attorney." These three sections, when considered together, clearly charge the county attorney with the same duties as the Commonwealth's attorney. When the latter is present in court, he controls all suits or proceedings in which the Commonwealth is interested, and, when he is absent, this duty devolves upon the county attorney.

In the case at bar the Commonwealth's attorney was not absent from the city of Louisville during the time that appellee was employed as special counsel to assist the county attorney, so far as the record shows, but he was absent from the cases which were being prosecuted by the county attorney and appellee, and

he was refusing to proceed against the saloon keepers who violated the law by penal action, and the management of these suits was, so far as the Commonwealth's attorney was concerned, left entirely to the county attorney and appellee.    In fact, it appears that the Commonwealth's attorney consented and agreed, in advance of the employment of appellee, that the county attorney might take charge of all such cases as it was proposed to proceed against by penal action.    It is the policy of the Commonwealth to see that the laws are enforced.    This is the proper duty of the executive.    He acts, of course, through officials subordinate in power to himself, and these, in turn, frequently act through others.    In the case of the Commonwealth's and county attorney, each is charged with the duty of looking after the business of the Commonwealth in the circuit court.    When both are present the management and control of suits is, by statute, placed in the Commonwealth's attorney, and in his absence in the county attorney.    If, for the purpose of the presentation of this point, it is admitted that the suit in question is a civil suit, counsel for the Commonwealth would admit that the Governor would have a right to appoint special counsel to assist the Commonwealth's attorney, and since, as by statute, it is made the plain duty of the county attorney to take charge of the business of the Commonwealth in the circuit courts in the absence of the Commonwealth's attorney, we are clearly of opinion that, if the Governor knew at the time of making the appointment that the Commonwealth's attorney was absent or declining to act, he could appoint such special counsel to assist the county attorney.    In fact, in a case like the case at bar, where the Commonwealth's attorney is refusing to act, it would have been idle to have

appointed special counsel to act with him. The Commonwealth's attorney not being in sympathy with the plan which the Governor desired to set on foot and carry out in order to try and enforce the observance of the Sunday closing law, he could not look to him for assistance, but was compelled to seek the aid of the county attorney, who was in sympathy with the movement, and who was willing to co-operate with him.

The primary object of the statute in authorizing employment of special counsel at all is to see that the State's interests are properly looked after and protected, and, as it is the duty of the Commonwealth's attorney to have charge of the civil business of the Commonwealth in the circuit court the statute authorizing the employment of special counsel to assist in that class of business referred only to Commonwealth's attorney; but this statute, when read in connection with the statute defining the duty of the county attorney, shows plainly that the Legislature had in mind that the special counsel, when so employed, should assist the attorney for the Commonwealth in looking after the State's business. In fact, so far as the management and conduct of the State's civil suits are concerned, the county attorney, in the absence of the Commonwealth's attorney, is clothed with all the power and authority of the Commonwealth's attorney, and to say that the Governor may employ special counsel to assist the former and not the latter would, in cases like the one at bar, defeat the very purpose of the statute, and would place it in the power of the Commonwealth's attorney, by declining to act, to prevent the employment of special counsel, no matter how urgent the need therefor might be. The purpose of the lawmakers evidently was to pro-

vide for the employment of special counsel in the conduct of the Commonwealth's civil business, where the exigencies of the case were such as to require it. The object of such employment was the protection of the business of the State, rather than the lending of aid to a particular man, and the only reasonable and fair construction that can be placed upon the statute is that which the lower court evidently placed upon it; that the Governor has authority to employ special counsel in civil cases in the circuit court to assist the attorney representing the Commonwealth in such cases, be he Commonwealth's attorney or county attorney.

We come next to a consideration of the second objection raised by the State to the allowance of this claim, which is that the suits which it was proposed to prosecute were, while civil in form, criminal, and not civil, in their nature, and that, therefore, the Governor was without authority to employ special counsel to prosecute same. Section 11 of the Criminal Code of Practice provides: "A public offense, of which the only punishment is a fine, may be prosecuted by a penal action in the name of the Commonwealth of Kentucky, or in the name of an individual or corporation if the whole fine be given to such individual or corporation. The proceedings in penal actions are regulated by the Code of Practice in civil actions." And section 92 of the Civil Code provides that actions must be brought in the county where the action, or some part of it, arose, for the recovery of a fine, penalty or forfeiture, imposed by statute. It will be observed that the right to an action is given the Commonwealth, and that the Civil Code regulates the proceedings in penal actions. A penal action for the recovery of a fine, where no imprisonment can be

imposed, has uniformly been classified by courts of last resort, State and federal, as a civil action for debt. Our own court in the case of Commonwealth v. Avery, 14 Bush 627, 29 Am. Rep. 429, expressly so held. There suit had been brought in the name of the Commonwealth to recover a forfeiture of the money won on an election bet. The defendant demurred to the jurisdiction of the common pleas court, claiming that the circuit court, which was a court of criminal jurisdiction, alone had jurisdiction. The demurrer was sustained, and, upon appeal to this court, in reversing the judgment of the lower court, it was said: "It is conceded that the common pleas court has no criminal or penal jurisdiction, and whether it has jurisdiction in this action or not must depend on the question whether it is a civil action. That the Legislature may authorize a civil action to be maintained for the recovery of a forfeiture has not been disputed. The action of debt has always been esteemed an appropriate action for the recovery of a penalty imposed by the statute. This statute, though not in name an action of debt, is such in its nature, and it is an appropriate action for the recovery of the alleged forfeiture, and was within the jurisdiction of the Jefferson court of common pleas. * * * This is not a 'criminal prosecution,' nor 'an indictable offense,' within the meaning of the Constitution. Betting on an election was never a crime or indictable offense at common law, nor is the offense as prescribed by the statute to be visited with any infamous punishment, and it does not, therefore, come within the meaning of the twelfth and thirteenth sections of the Constitution above quoted, either as a 'criminal prosecution' or as an 'indictable offense.' * * * We have seen that the offense in this instance is purely statutory,

that the Legislature, having limited punishment to a fine, has the constitutional power to prescribe that the punishment should be inflicted by a proceeding in a civil action, or by an indictment, one or both; and that neither was dependent upon the other.''

It is urged that in the Avery case the proceeding was for the recovery of a forfeiture, but in that case the court dealt with a fine, penalty, or forfeiture alike when it held that the ''action of debt has always been esteemed an appropriate action for the recovery of a penalty imposed by statute.'' We are unable to draw a distinction between a penalty imposed for the viola-tion of the Sunday closing law and a penalty imposed for violating the statute against betting on an election. In the case of Commonwealth v. Sherman, 85 Ky. 688, 9 Ky. Law Rep. 218, 4 S. W. 790, a penal action was instituted in the common pleas court of Jefferson county to recover a fine imposed against an insurance company for the illegal collection of a premium. In that case a demurrer was sustained to the jurisdiction on the ground that it was a criminal proceeding. Upon appeal here the case was reversed, this court holding that the common pleas court, which was a court of exclusively civil jurisdiction, had jurisdiction to try the case, as the action was civil, and not crim-inal. Not only has our own court held a prosecution for the enforcement of a penalty for the violation of a statute, where no imprisonment is imposed, to be a civil action, but other jurisdictions, as well, have with a degree of uniformity so held. In Mitchell v. State, 12 Neb. 538, 11 N. W. 848, an action was instituted to recover a fine for the sale of intoxicating liquors to an infant without the consent of his parents. The point being raised by the defendant that the proceed-ings should be criminal, and not civil, the court said:

"The action on a penal suit to recover money as a penalty is a civil suit." And, in the case of Brophy v. City of Perth Amboy, 44 N. J. Law 217, an action was brought to recover a fine imposed for a violation of a city ordinance regulating beer saloons, etc. The ordinance provided for either a fine or imprisonment, and in a civil suit imprisonment was enforced. On appeal the question was raised as to whether or not appellant was entitled to a discharge under an act providing for the release of persons imprisoned on civil process. In passing upon the right to proceed against the defendant by civil suit, the court said: "Where such an action is brought, the proceeding is civil, and not criminal; and the rules of procedure in civil cases, unless otherwise provided, are applicable to it." In Campbell v. Board of Pharmacy, 45 N. J. Law 241, an action was brought to recover a fine against a druggist for not complying with the law, as to registering, etc. It was insisted that it was a criminal proceeding, and that the defendant's constitutional guaranties were being invaded, etc. In response to this contention this court said: "An action for a penalty is a civil action as much so as an action for money had and received." In the case of Stearns v. U. S., Fed. Cas. No. 13,341, in passing upon a similar question, the court said: "This was not a criminal prosecution, but a civil action to recover a penalty for breach of a statute. * * * Action for penalties are civil actions, both in form and substance." And in the case of U. S. v. Elliot, Fed. Cas. No. 15,043, an information in the nature of a debt was filed by the United States to recover a fine imposed upon the owner of a vessel for failing to provide medical stores. The defendant insisted that it was a criminal proceeding, and should be on information or indictment. To

this contention the court responded: ''It is well settled that when pecuniary penalties are affixed by statute to an act or a neglect, and there is no imprisonment provided for or other reason to suppose that a mere punishment is intended, and no special remedy is pointed out in the statute, a civil action (formerly always debt) will lie for their recovery, although the penalties are for the sole use of the sovereign.'' This last opinion was delivered by Chief Justice Marshall, who was then acting as circuit justice. Section 118 of the Kentucky Statutes of 1903, which authorizes the employment of special counsel, expressly says that in civil actions they may be so employed. Where a statute is capable of two constructions, one of which would be calculated to defeat the ends of justice, and the other would be in furtherance thereof, the latter will be adopted. The importance of litigation to the State can not be measured by the amount involved in the controversy; it quite frequently happening, as in the case at bar, that the State is fighting for the enforcement of a principle rather than making an effort to recover sums of money. She was seeking to have the law observed, and, the local authorities having failed in its enforcement, the Governor was called upon to lend his assistance. He recommended to the Commonwealth's attorney a plan which he thought would be effective. His recommendations were turned down. The plan suggested by him was neither approved nor acted upon by the Commonwealth's attorney. The law was being openly and flagrantly violated. Citizens were appealing to him for assistance. The county attorney offered to proceed against the violators along the line suggested by the Governor, and the Commonwealth's attorney, while declining to act, agreed that he would not interfere. The Gov-

ernor employed special counsel, and at once set on foot the institution of the penal actions, as above set out. The wisdom of his course was demonstrated by the success with which the efforts of the county attorney and appellee were attended. The observance of the law was enforced, and it was clearly demonstrated that violations of the character complained of could be stopped by proceeding against the offending parties by civil suits.

But it is insisted for the Commonwealth that, because in civil suits for the enforcement of a penalty the defendant is entitled to certain privileges and immunities, such as freedom from giving evidence against himself, the benefits of the plea of not guilty, and the reasonable doubt instruction, that, therefore, the claim should not be paid. It is true that it has time and again been recognized that the defendant in a civil suit, wherein the enforcement of a penalty is sought, is entitled to certain constitutional guaranties, but these immunities to the defendant can not in any wise militate against the nature of the action, and that is the question that we are dealing with. The Legislature clearly had the right to determine the nature of the action, subject to the immuntiies guaranteed by the Constitution, and, where a penalty only is sought to be recovered, the action is civil, and is tried according to the provisions of the Civil Code, although no answer other than the plea of "not guilty" is required of the defendant. The Commonwealth in this case occupies an anomalous position. She elected to proceed against the violators of the Sunday closing law by civil suits, and the Governor, believing that the best interests of the State demanded that special counsel be employed to assist in their prosecution, arranged with appellee to render the Commonwealth certain

services.   Under his employment from the Governor,
at considerable labor, he rendered the services, which
proved valuable.   Now, when he asks for his compen-        •
sation, he is met with the answer that although he was
employed to bring civil suits for the State, and did
so, yet, notwithstanding that fact, the suits were not in
fact civil.   Under the facts stated in this case the
position of the Commonwealth is not tenable.

   The suits instituted by appellee on behalf of the
Commonwealth were civil suits, and we are clearly of
opinion that, in making the employment, the Governor
acted within the scope of the authority given him by
section 118 of the statutes of 1903, and the judgment
is therefore affirmed.