OSCAR EISENTRAUT, APPELLEE, V. CHARLES MADDEN,
APPELLANT.

FILED JANUARY 2, 1915. No. 17,738.

1. Instructions to a jury in a lawsuit should be confined to and be
in accord with the evidence submitted upon the trial.

2. Assault and Battery: ACTION FOR DAMAGES: DEFENSE. The rule
that when. parties enter into a mutual combat, and the victim
in good faith withdraws therefrom and is afterwards assaulted,
he may recover damages for such assault, does not apply when
one who is assaulted and severely beaten strikes his assailant
immediately, in the heat of passion, upon escaping from his
attack.

APPEAL from the district court for Johnson county:
JOHN B. RAPER, JUDGE. Reversed.

Neal & Armstrong, F. L. Dinsmore, E. F. Warren and
E. B. Quackenbush, for appellant.

S. P. Davidson and Hugh LaMaster, contra.

REESE, C. J.

This is an appeal from a judgment of the district court
for Johnson county, wherein plaintiff, Eisentraut, recov-
ered a judgment against defendant, Madden, for the sum
of $1,500 on account of personal injuries alleged to have
been inflicted upon plaintiff by defendant by unlawfully,
and without cause, striking plaintiff upon the back part of
the head with a large, heavy, metal scoop shovel, whereby a
lasting and permanent injury was suffered by plaintiff, the
character and extent of the alleged injuries being fully set
out in the petition, together with plaintiff's pain and suf-
fering, physically and mentally. The amount sued for
was $10,000. The petition also contains a second cause of
action, by which the expenses of the sickness and ailments,
consisting of physicians' treatment and medicine, are al-
leged to the amount of $300, making a total of $10,300
damages alleged to have been suffered. Defendant an-

swered (1) by a general denial; (2) alleging that plaintiff first made an unlawful assault upon him, that he resisted the same only in self-defense, and that he used only such necessary force as was required from the assault and beatings inflicted upon him by plaintiff; (3) that, at the time mentioned in the petition, plaintiff, without lawful excuse or provocation, assaulted defendant, striking him, knocking him down, beating him when down, and inflicting a permanent injury to his right eye, by which the sight of his said eye was greatly and permanently impaired, and, in addition to his pain, suffering and mental anguish, he has been compelled to undergo treatment for his eye at heavy expense, and that he has thereby been damaged in the sum of $10,500, for which he asks judgment. Reply, a general denial. A jury trial was had, with the result above stated. Defendant appeals.

The evidence is conflicting in many respects, but, so far as the facts concerning the alleged assaults are concerned, there is practically an agreement. There was some difficulty between the parties, which seems to have been of a trivial nature. Plaintiff was a school district officer, but, upon the expiration of his term of office, was succeeded by defendant, who claimed there had been some slight irregularity in keeping the books of the office. Owing to some assertion by plaintiff as to his knowledge and ability to properly keep his accounts, defendant styled plaintiff as "Professor," which seemed to nettle him. At times harsher epithets were used by both parties, but this consisted of words only. On the 3d day of December, 1910, a neighbor was engaged in shelling corn, and these parties were called in to assist. Upon defendant's arrival at the place of the shelling, he passed near plaintiff, when he gave his apparently usual salute, "Hello, Professor." This angered plaintiff, who immediately ordered defendant to cease "calling him names." He approached defendant in a menacing manner, shaking his fists, and cursing violently, but to which defendant made little, if any, response, standing still, but holding his scoop shovel in such a position as to ward off any blows which plaintiff might attempt

to inflict.   Plaintiff succeeded in breaking defendant's guard, striking him in the face, knocking him down, and immediately sprang upon him, beating him about the face, in the course of which assault defendant received an injury to his eye, which is claimed to be permanent.   Defendant, being unable to protect himself, called to his son, who was near-by, to take plaintiff off, which he did.   Up to this time plaintiff seems to have been the sole aggressor.   Upon being taken off defendant, he started to walk away, probably with his side to defendant.   Upon being released, defendant picked up his scoop shovel and struck plaintiff upon the head with the bowl or under side of the shovel, inflicting a small flesh wound, and which felled plaintiff to the ground.   The alleged injury to plaintiff appears not so much to be the superficial wound itself as the effect of the blow upon the nervous system.   The injury to defendant is alleged to be a rupture to the muscles and membranes of the eye, involving the retina and other parts of the inner eye, caused by the blow on the eye when defendant was knocked down, or thereafter while he was on his back receiving the blows inflicted by plaintiff.   From the testimony of physicians and surgeons, as well as other witnesses, it would seem that both parties received more or less serious injuries, from which complete recovery is, to say the least, in doubt.

There is practically no conflict in the evidence as to the beginning of this unfortunate affair.   While it was not in good taste for defendant to be derisively calling plaintiff "Professor," yet it did not charge him with the commission of any offense against the laws of the state, nor of the United States, nor did it accuse plaintiff of the violation of public morals, nor in any way slander him, nor hold him up to public contempt, ridicule or scorn.   It was not intended as a pleasantry, perhaps, and yet could scarcely be considered so exasperating and defamatory as to excuse the assault which followed.   The evidence shows that defendant committed no act which could be construed as a physical attack upon plaintiff, nor a desire to enter into a contest of that kind.   Plaintiff was angry,

and approached defendant in a menacing manner, using language which could not be approved in polite society in any ordinary parlor conversation. Prior to the striking of the blow by plaintiff which felled defendant to the ground, defendant's actions were not aggressive, but rather indicated a desire to protect himself against the actual attack of plaintiff. Plaintiff could have withdrawn at any time before striking defendant, and the subsequent events would not have followed. He succeeded in striking defendant, knocking him down, when he sprang upon defendant and followed up the attack by striking and pounding him, until defendant, apparently becoming satisfied that, under the circumstances, he was no match for plaintiff, called for help, and plaintiff was, by force, removed. It may be assumed that defendant was not in the most pleasant frame of mind by that time, and not calculated to act with cool judgment and deliberation. Upon being released, he seized the shovel and dealt the blow of which plaintiff complains, felling plaintiff to the ground. Plaintiff arose, declaring in emphatic and forceful language, but not elegant, that he could whip defendant, but this seems to have closed the incident for the time being.

It is contended by plaintiff that he had abandoned his attack and was moving away when he received the blow complained of; but, if so, the distance to which he had gone is not clearly stated. However, it seems quite clear that he was not far enough away to have given defendant sufficient time to do much in the way of reflection. Otherwise stated, the blow with the shovel was not so long after the castigation received by defendant as to justify holding it to be a separate transaction and not a part of plaintiff's attack. Plaintiff was the aggressor. He committed an unlawful assault upon defendant, the final result of which was evidently not satisfactory to him. To use a common expression, he "got the worst of it." The question then arises: "Can plaintiff, after assaulting defendant, knocking him down, and inflicting an injury upon him, recover damages for what he has suffered and is suffering, which are the natural result of his own act?" We use the words

"natural result," not in the sense of a resulting or neces-
sary effect of previous conditions, but those which might
be looked for or expected, when considering the natural
effect the treatment, or punishment, suffered by defendant
would have upon an ordinary human being.   Defendant
was smarting under the injuries which he had received.
Plaintiff, apparently satisfied with what he had done,.
claims that he turned to move away, when defendant con-
tinued the affray by striking plaintiff.

A kindred question arose in *Fosbinder v. Svitak*, 16 Neb.
499, where we held that a plaintiff could not recover where
he had been the original assailant, the first wrongdoer,
and, upon receiving injuries resulting from the affray
brought on by himself, transfer his cause from the battle-
field to the courts.   A somewhat similar question was
presented in *Taylor v. Clendening*, 4 Kan. 524, although
not based upon exactly similar facts.   In that case the
plaintiff was held to be the aggressor, but his withdrawal
from the affray was not as claimed in this case.   The
court say:  "He cannot undertake to wreak an (un)lawful
vengeance upon his antagonist—pistol in hand—and, de-
feated, sue him for damages to the person, upon the basis
of the instructions.   He must run his own risk.   Nor would
it be an easy matter for the party, attacked in the manner
narrated in the testimony of the defendant, to act with
all the deliberation the instruction would seem to require.
In the heat of blood he could hardly be expected to weigh
his words or to measure or count his blows or shots very
carefully."

At the request of plaintiff, the court gave to the jury
the following instruction:  "The court instructs the jury
that the defendant alleges that he acted in self-defense.
You are instructed that the law does not permit a person
to voluntarily seek or invite a combat, or put himself
in the way of being assaulted, so that when hard pressed
he may have a pretext to injure his assailant.   The right
of self-defense does not imply the right of attack, and it
will not avail in any case where the difficulty is sought
for and induced by the party by any wilful act of his,

or where he voluntarily and of his own free will enters into it. The necessity, being of his own creation, shall not operate to excuse him. Nor is any one justified in using more force than is reasonably necessary to get rid of his assailant. Now, if you believe from the evidence in this case that the defendant, Madden, voluntarily sought or invited the difficulty in which the plaintiff, Eisentraut, was injured, if you believe from the evidence that he was injured, or that the defendant provoked or commenced or brought it on by any wilful act of his own, or that he voluntarily or of his own free will engaged in it, then and in that case you are not authorized to find for the defendant upon the ground of self-defense. In determining who provoked or commenced the difficulty or made the first assault, you should take into consideration all the facts and circumstances in evidence before you."

As we view it, much of this instruction cannot be applied to the evidence in this case. Assuming that the words, "Hello, Professor," can be construed as offering a direct insult, one that would, ordinarily, cause anger on the part of plaintiff, we are yet met with the well-established rule that mere words cannot justify an assault upon the person using them. There was therefore no legal excuse which could justify the attack of plaintiff upon defendant, which the evidence clearly shows he made. Without any just cause or excuse, he made such an attack, knocking defendant down. Plaintiff seems not to have been satisfied with the injury thus inflicted, but followed up the advantage thus gained by springing upon defendant and administering further beatings until defendant called for help, and plaintiff was forcibly pulled off the prostrate body of his victim. We find nothing in the evidence showing that defendant did "voluntarily seek or invite a combat, or put himself in the way of being assaulted, so that when hard pressed he may have a pretext to injure his assailant." Nor can we apply the direction that "the right of self-defense does not imply the right of attack, and it will not avail in any case where the difficulty is sought for and induced by the party by any wilful act of his, or where

he voluntarily and of his own free will enters into it. The necessity, being of his own creation, shall not operate to excuse him."

The instruction also submits to the jury the proposition that, if defendant voluntarily sought or invited the difficulty, or if defendant provoked or commenced or brought it on by any wilful act of his own, or if he voluntarily or of his own free will engaged in it, the jury would not be authorized to find for defendant upon the ground of self-defense. There may be no question but that the instruction is sound law when applied to a state of facts coming within the rule, but, as we read the evidence, there was nothing therein to which the rule could be applied, and we are persuaded that the instruction, as written, should not have been given. From an examination of the instructions given on the court's own motion, it is clear that the law was fairly and fully presented to the jury, and all well within the issues in the case, and should have been sufficient.

Substantially, the same instruction was given and approved in *Morris v. Miller,* 83 Neb. 218, annotated in 20 L. R. A. n. s. 907; but there is a clear distinction between the two cases. In the *Morris* case the parties to the affray voluntarily and mutually agreed to enter into the contest, and both were wrongdoers. Therefore the instruction was properly given in that case. As we have shown, the facts in this case were quite different. The rule stated in *Glassey v. Dye,* 83 Neb. 615, is more clearly applicable to the facts of the case at bar than that of *Morris v. Miller, supra.*

While we recognize the established rule that, if a plaintiff wrongfully assaults a defendant, and, upon reflection, or for some other reason, voluntarily withdraws from the conflict, the person assaulted is not justified in following up the withdrawing party, and, after time for reflection, inflict a new and counter assault, and he may, in a proper case, be held liable for any damage arising from his wrongful assault; but that rule must be applied in reason and with a proper consideration for the passions and infirmities

of humanity. In this case the assault was committed by plaintiff with no legal justification or excuse. Had he voluntarily withdrawn from the contest after knocking defendant down, defendant might have been placed in the wrong, had he deliberately followed plaintiff, as he retreated, and renewed the contest by a counter assault; but that is not this case. After striking defendant and knocking him down, he sprang upon him, following it up by beating and pounding defendant, while down, until forcibly pulled off by others who came to defendant's relief. He was certainly willing to continue the punishment of defendant until forcibly compelled to desist. Defendant, while suffering and smarting from the injuries which he had received, arose from the ground, picked up his shovel, which was not necessarily a deadly or dangerous weapon, and gave the blow of which plaintiff complains. Plaintiff is entirely willing to forgive and forget the injuries inflicted upon defendant, but seeks to recover a money compensation for the injury he received in the affray which he inaugurated and followed up until compelled by force to desist, and which was immediately followed by what he received.

We are constrained to believe that the instruction above quoted should not have been allowed.

The judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.

LETTON and ROSE, JJ., not sitting.

SEDGWICK, J., concurring.

The majority opinion seems to hold that the evidence establishes that the blow of which this plaintiff complains was so connected with the affray which the plaintiff himself brought on that it must be regarded as a part of that affray. If this is the necessary conclusion from the evidence of course the judgment is wrong. I think that the instruction set out in the opinion was not applicable to the evidence, and was therefore erroneous. It was highly prejudicial to the defendant. For this reason I concur in the reversal of the judgment.