## West et al. v. Nantz' Administrator.

(Decided Feb. 5, 1937.)

J. B. JOHNSON and L. O. SILER for appellee.

TYE, SILER, GILLIS & SILER for appellants.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

One of the defendants in this case against whom judgment was rendered in the Whitley circuit court, where the action was brought, prosecuted an appeal to this court in which the other defendants in the judgment (appellants here) did not join, and we reversed the judgment as against it in the case of National Surety Corporation v. Nantz, 262 Ky. 413, 90 S. W. (2d) 385. The reversal was based solely upon a ground pleaded and relied on only by that defendant, since such special defense (and which appears in the opinion) was available only to it, although it also contested the merits of the case. There was no intimation, therefore, in that opinion as to the merits of the case as affecting the other defendants against whom judgment was also rendered, none of whom were appellants on that appeal, nor could either of them avail themselves of the special defense relied on by the defendant who did prosecute that appeal. Before the expiration of two years from the rendition of the judgment, the appellants West and Hood brought this appeal and asked that they be per-

mitted to prosecute it on the record brought to this court in the appeal referred to, which record contained the pleadings, demurrers, and other steps taken at the trial, which was a joint one, as well as the bill of exceptions that had been filed by the appealing defendant in that appeal; neither West nor Hood having filed any separate bill of exceptions in the trial court.

The appellee, plaintiff below, moved this court by way of objecting to the motion by appellants to affirm as a delay case, to strike the bill of exceptions and the transcript of the evidence from the record so as to deprive the present appellants from relying upon them. The ground for that motion was and is that the bill of exceptions (which also included the transcript of the evidence heard at the trial) was filed solely by the National Surety Corporation, the only appellant in the first appeal supra, and that such preparatory documents could not be relied on by the present appellants because not prepared or filed by them as "their" bill of exceptions, and which personal preparation and filing counsel for appellee insist is mandatory. All objections of appellee, including his motion to strike from the present record such preparatory documents, were overruled before submission, but, nevertheless, the same insistence is now made on the hearing of the merits after final submission and which presents the first question for determination. The objections, as will be noted, have already been passed on adversely to appellee, but that ruling, which was made without comment, is not necessarily binding upon a hearing of the appeal on its merits after final submission and it, therefore, becomes necessary to dispose of those questions as the first ones presented upon this final hearing.

Necessarily appellee's motions are bottomed upon the idea that a bill of exceptions (including a bill of evidence) possesses some of the characteristics of personal ownership by the appealing litigant who prepared and filed them and counsel cites in support thereof subsection 1 of section 337 of the Civil Code of Practice, saying: "If the decision be not entered on the record, or the grounds of objection do not appear in the entry, the party must prepare *his* bill of exceptions and present it to the judge for his signature." (Our emphasis.) The argument is that the possessive pronoun "his" has the

effect to deny the right of any joint defendant in the judgment appealed from to avail himself of a complete bill of exceptions which was prepared, offered, tendered, and filed by another joint defendant in the judgment and in which appeal the later appealing defendant did not join. It will be perceived from that language that a bill of exceptions is not required where the decision objected to, and about which complaint is made, is one that is required to be and is entered upon the record and which appears "in the entry" upon the record. Its office is to present a facsimile of what occurred off the record during the trial or pendency of the cause in the trial court. It is, therefore, not the bill of exceptions of the particular appealing defendant who prepared or formulated it for the signature of the judge who presided at the trial, but rather when so signed by the judge it becomes the court's bill of exceptions, certifying to what happened off the record during the trial, and if such certifications include all that happened during the trial, affecting the relative rights of the appellee and a later appealing unsuccessful litigant, as completely as if the latter had himself prepared in substantial duplicate form another bill of exceptions and procured the presiding judge to certify to it, it is difficult for us to perceive the necessity of such duplicate preparation or to discern any reason why the later appealing litigant should be deprived of his right to a review of the errors presented in the all-embracing bill of exceptions previously and properly filed by the first appellant from the judgment jointly rendered against both, or all of them. We have been cited to no decision since the enactment of the Civil Code so determining the practice, nor have we found anything in any of the Code sections relating to the matter which, in express terms, or by necessary implication, requires such duplicate filing. Of course, if in such circumstances the first appellant did not rely upon the same defense that his joint defendants in the judgement relied on, and appealed exclusively from some ruling, on a defense peculiarly applicable to him and which defense only he brought to this court in the bill of exceptions filed by him, then perhaps it could not be made available to a later appealing judgment defendant whose defense was not involved in the first appeal; nor would anything that this court might say, or any ruling that it might make in disposing of the

first appeal concerning any such special defense, affect the question on a later appeal by another joint defendant in the judgment, the one way or the other. But if the bill of exceptions filed by the first appellant presents a correct transcript of what happened off the record relating to defenses made by the later appealing appellant as well, it would be fallacious, as we conclude, to hold that such later appellant could not avail himself thereof because he in person, or by counsel, did not prepare and file for the court's signature the bill of exceptions originally.

The argument of counsel would require each defendant in a joint judgment to file his separate bill of exceptions, or for the court to say in its order that the bill of exceptions was a joint one and jointly prepared and filed by each and all of the joint obligors in the judgment. But when, as is true here, there is nothing in the bill of exceptions to show any such facts except the order filing it which is that it was done upon the motion of the first appellant (though in the body of the bill of exceptions it purports to contain a certification from the judge of the trial court as to what happened off the record during the pendency of the cause in the court below and during the trial) then it is available to only the one who filed it. Suppose the court himself, as indeed in contemplation of law is the fact, should prepare the bill of exceptions and then certify to it and order it filed, could it with any degree of reason or plausibility be insisted that none · of the defendants could avail themselves of it because, forsooth, neither of them had composed or prepared it for the court, but that he himself did so? It is our conclusion that the question calls for none other than a negative answer. Indeed, a stenographer's transcript of the evidence duly certified by him constitutes a bill of exceptions and when approved by the judge and filed by an order of court entitles this court to consider its contents on appeal, although it was not prepared by any particular appealing appellant. See Louisville & N. R. Co. v. Stewart's Adm'r, 207 Ky. 516, 269 S. W. 555; Blankenship v. Fullerton's Adm'x, 230 Ky. 795, 20 S. W. (2d) 983; and Asher v. Nuckols, 253 Ky. 223, 69 S. W. (2d, 331.

It will, therefore, appear to inevitably follow that a like effect should be given to that part of a bill of exceptions incorporating the instructions offered, re-

fused, and given, and other matters off the record not embraced in the stenographer's transcript of the evidence, when such additional bill of exceptions should be prepared and ordered filed by the court by and at the behest of another than the particular appealing defendant, since there can be no reason for holding that the evidence heard at the trial when so made a part of the record might be considered on appeal; whilst the other necessary matters to be incorporated in a bill of exceptions could not be considered though each of them was prepared and made a part of the record in the same manner, i. e., by another than the one who seeks to employ them on his separate appeal. Authority for the office and purpose of a bill of exceptions, as hereinbefore pointed out, is found in our opinions in the cases of Barnard-Leas Manufacturing Co. v. Washburn, 99 S.W. 664, 30 Ky. Law Rep. 813, and Broadway & Newport Bridge Co. v. Commonwealth, 173 Ky. 165, 190 S.W. 715, with other cases therein cited, and innumerable others rendered since that date. A similar question, but relating to the taking of exceptions to a ruling of the court, was disposed of adversely to the appellee's contention in the case of Turner v. Patterson, 5 Dana, 292. We, therefore, conclude that the bill of exceptions filed by the appellant in the first appeal, supra, which contained everything necessary to be incorporated in the bill of exceptions affecting the rights of the parties to this appeal, is available to appellant, and that the contention of appellee's counsel to the contrary should be and it is overruled.

That bill of exceptions shows, not only the evidence heard upon the trial, but it also contains the instructions offered and those given by the court to the jury as well as the exceptions of the parties thereto. The appellant West filed a motion for a new trial and objected to the order of the court overruling it, and he also made motion for a peremptory instruction in his favor, at the close of the testimony for appellee (who was plaintiff below), which the court overruled and he excepted thereto. All of the defendants then consented to the submission of the cause on the plaintiff's testimony without introducing any in their behalf touching the merits of the case, when the jury returned a jont verdict in favor of plaintiff for the sum of $1,700. Upon the overruling of West's motion for a new trial, he prayed an appeal

to this court, but did not prosecute it with his co-defendant who was the appellant in the appeal, supra, but did seek and procure this appeal within the two years within which an appeal might be taken.

The action is based upon an alleged unlawful, wrongful, and fatal assault made by Hood, the deputy sheriff, upon the deceased Nantz, who had committed a misdemeanor in the presence of the latter, the alleged wrongful assault consisting in the officer using more force than was necessary to effect the arrest of Nantz or to detain him and prevent his escape after he was arrested, and which assaulting was not justifiable under Hood's right of self-defense—all of which was denied by defendants in their separate answers, except the defendant Hood, who filed no answer to the petition, and it was taken as confessed against him; but the case was contested and practiced by West throughout the trial in the manner hereinbefore pointed out. Because the deputy sheriff, Hood, admitted the allegations of the petition against him by not responding thereto the judgment as to him cannot be reviewed by us, and no legal reason is pointed out why it should not be affirmed. But a different question is made by the appellant West. He personally did not commit any of the complained of acts, nor was he present at the time. However, if his deputy, Hood, exceeded his rights as an arresting officer in the discharge of his official duties and inflicted the injuries on the deceased, Nantz, as charged in the petition, then his principal, West, would be responsible therefor personally, as well as on his official bond. See Johnson v. Williams' Adm'r, 111 Ky. 289, 63 S. W. 759, 23 Ky. Law Rep. 658, 54 L. R. A. 220, 98 Am. St. Rep. 416. Many other domestic cases following the rendition of that opinion have approved it without dissent. If, however, the evidence heard at the trial failed to prove sufficient facts to overcome the presumption that Hood acted within his rights as an arresting officer upon the occasion complained of, then plaintiff (appellee) failed to make out his case against West, conceding that the allegations of plaintiff's petition were sufficient for that purpose, which we conclude is true. We are thus brought to a consideration of plaintiff's proof on that essential issue as contained in the stenographer's transcript of the evidence heard at the trial.

No eyewitness was introduced as to what happened upon the occasion complained of. One or two witnesses testified, in substance, that Hood admitted after the occurrence that Nantz engaged him in a scuffle in an effort to take from him his pistol and in the scuffle the pistol fired, producing the wound which later resulted in the death of Nantz. That admission was introduced by plaintiff on the trial, although its tendency was to relieve Hood from any liability based upon the employment of unnecessary force by him in making the arrest, or as establishing any other ground of liability. The only other testimony upon the crucial facts in the case was given by Clyde Brown, who was in a parked car with two other companions located about one hundred yards from the place where the complained of transaction occurred, but out of sight of the witness and his companions. That witness (Brown) testified that he heard a mule or other animal coming down the road and directly heard someone say, "Halt," and that he then heard a voice saying, "You are killing me," and a voice that said, "Stop you are under arrest." His other companions did not appear as witnesses in the case, and he stated that he did not know who spoke the words or made the exclamations to which he testified, nor did he pretend to state, expressly or inferentially, the circumstances that provoked such exclamations, since the parties were out of his sight and he saw neither of them until after he heard the shot and the transaction was entirely over. Such in substance, is all of the testimony that was introduced by plaintiff to prove that Hood in any way exceeded his authority upon the occasion in question, or that he did not act at any time throughout the difficulty in his necessary self-defense; and the question to be determined is, whether the court should have submitted the case as against the answering defendants upon the testimony as so adduced?

In the case of Connelly v. American Bonding & Trust Company, 113 Ky. 903, 69 S. W. 959, 961, 24 Ky. Law Rep. 714, the exact question was presented for determination. It was an action of the same character and kind as is this one. The plaintiff's pleadings made the proper allegations against the officer to entitle plaintiff to recover if they were true. They were put in issue by the defensive pleadings, and the evidence failed to establish them, in that it failed to overcome the presumption

that the officer acted within the scope of his authority in the performance of his duty and exceeded his rights in arresting the plaintiff in that case. In disposng of the appeal we employed this language: "But there may be instances in which a peace officer may lawfully assault and severely beat and bruise another. As, for example, if he lawfully arrests such person, and the prisoner resists, and attacks the officer, and puts the officer in danger of bodily harm, the officer is not bound to retreat, or to make his escape, or to take any means for his self-defense that would be incompatible with his duty to safely keep the prisoner. So he may in such case at once use force against force, using no more than is necessary; and although, in doing so, he might severely assault and beat and bruise the prisoner, and though such an assault might be cruel,—that is, heartless and unfeeling,—yet it would not be illegal. Or, if the prisoner had committed a felony, and had been arrested, and was attempting to escape, and the officer could not prevent it otherwise than by severely assaulting, beating, or bruising the prisoner, he would have the legal right to do so. The facts attending the arrest of appellant are not shown, nor is the charge upon which he was arrested stated. We certainly are not at liberty to presume anything in aid of his statement of a cause of action. As to the officer the rule is different. In Throop, Pub. Off. sec. 558, it is stated: 'The presumption is always in favor of the correct performance of his duty by an officer, and every reasonable intendment will be made in support of such presumption. So it will always be presumed that in any official act, or act purporting to be official, the officer has not exceeded his authority; and, if he had power to act only in a certain contingency, that the contingency has happened, where there is no evidence on either side with respect thereto.' Judge Folger, in Mandeville v. Reynolds, 68 N. Y. 528, said: 'The presumption is that no official person, acting under oath of office, will do aught which it is against his official duty to do, or will omit to do aught which his official duty requires should be done.' In Smythe v. Munroe, 84 N. Y. 354, it was said: 'It is always to be presumed that a public officer has acted with ordinary caution and in good faith.' Terry v. Bleight, 3 T. B. Mon. [270] 272, 16 Am. Dec. 101. This presumption is one of law that necessarily continues until it is overcome · by proof to

the contrary.'' The same doctrine is announced in section 579 of Mechem on Public Officers.

In the later case of Commonwealth v. Teel, 111 S.W. 340, 343, 33 Ky. Law Rep. 741, in approving the principle so announced in the Connelly Case we, in the same kind of action, said: ''On the other hand, if the arrest of appellant were lawful, and he sought to recover damages for the unlawful and unnecessary beating and bruising while under arrest, then it would have been necessary for appellant to have alleged that he was not trying to escape from the officer, and that he did not first assault him. If the arrest were lawful, and appellant endeavored to make his escape and in doing so made an attack upon appellant and put him in danger of bodily harm, the officer was not bound to retreat, but in such case had the right to use any means for his self-defense and for the keeping of the prisoner that were necessary and reasonable. Connelly v. American Bonding, etc., Co., supra.''

It is expressly averred in the petition in this case that the attempted arrest of Nantz was lawful, because (as alleged) he committed a misdemeanor in the presence of Hood. Therefore, the latter committed the acts complained of, if at all, in the exercise of his authority and discharge of his duty as an arresting officer. According to the cited authorities supra, the presumption that he did not exceed his authority in doing so ''is one of law that necessarily continues until it is overcome by proof to the contrary,'' a part of which presumption is, according to those authorities, that ''no official person acting under oath of office will do aught which it is against his official duty to do, or will omit to do aught which official duty requires should be done.'' The Connelly opinion expressly says that in favor of an officer—in cases where he had power to act in the manner charged only in a certain contingency—it will be presumed that the contingency was present and that the burden is on the one disputing it to both allege and prove the contrary. As we have seen, there was no proof to negative any contingency authorizing Hood to commit the charged assaults, including the alleged wrongful shooting. On the contrary, the proven admissions by him, made after the happening of the occurrence, undisputed as they were, clearly relieved him of respon-

sibility for firing of the shot resulting in the eventual death of Nantz. Such being the condition of the record, it is our conclusion that the court erred in not sustaining the motion of West for a peremptory instruction in his favor. If the evidence should be the same on another trial, the court will sustain that motion if made; but if there should be additional evidence to overcome the presumption supra of the officer, and to thereby make a submittable case to the jury, then the instructions should define the rights and duties of the parties and submit to it only the issues of excess authority on the part of the arresting officer, as is directed in numerous cases heretofore determined by this court.

As an item of damages sought to be recovered, plaintiff pleaded the amount of incurred hospital and physicians bills to the extent of $900, upon which the court admitted proof without objections and submitted that item to the jury in its instructions. The action evidently is brought under the provisions of section 6 of our Statutes, and the only recovery that can be had is for the destruction of the decedent's power to earn money and which confines the right of recovery only for the death of the decedent, and not for any financial loss sustained by him prior to his death. See Archer v. Bowling, 166 Ky. 139, 179 S. W. 15, and Souther v. Belleau, 203 Ky. 508, 262 S. W. 619, 36 A. L. R. 956. The error in submitting the particular item of damages referred to would be a reversible one had defendant properly objected thereto, but which was not done, and it was, therefore, waived on the trial under review. On a return of the case, however, the question may be raised by defendant if he sees proper to take the necessary steps therefor.

Wherefore, the judgment as to Hood is affirmed for the reasons hereinbefore stated, but as against West it is reversed, with, directions to grant him a new trial and for further proceedings consistent with this opinion. Whole court sitting.