Paul SCHELL, Plaintiff and Appellant,

v.

Curtis D. COLLIS, Louis Snider, and A. J. Jensen, State Commissioner of Insurance and Administrator of the State Bonding Fund of the State of North Dakota, Defendants and Respondents.

No. 7630.

Supreme Court of North Dakota.

May 17, 1957.

Rehearing Denied June 13, 1957.

Kelsch, & Scanlon, Mandan, for appellant.

Helgi Johanneson, Asst. Atty. Gen., Gerald G. Glaser, Sp. Asst. Atty. Gen., for defendant, A. J. Jensen, State Comr. of Insurance and Administrator of the State Bonding Fund.

William S. Murray, Bismarck, for defendant Curtis D. Collis.

Robert Feidler, Fort Yates, for defendant Louis Snider.

GRIMSON, Chief Justice.

This is an action which the plaintiff brings against the deputy sheriff and the sheriff of Sioux County, and the State Bonding Fund for damages alleged to have been inflicted on the plaintiff by the deputy sheriff in connection with an interrupted arrest of the plaintiff. The complaint alleges a cause of action against Collis, the deputy sheriff, Louis Snider, the sheriff, in their official capacities, and the State Bonding Fund as their surety. All of the de-

fendants denied liability. A jury was waived and the case tried to the court by stipulation. The court found for the defendants and ordered the action dismissed with prejudice and costs. The plaintiff appeals and asks for a trial de novo.

The plaintiff assigns as error the insufficiency of the evidence to support the findings of fact made by the court and that the court erred in its conclusions of law based upon those findings. As this case is here for trial de novo we will consider all the evidence generally to determine the issues raised by the plaintiff.

■ In that connection we will give appreciable weight to the findings of the trial court. We have not the advantage of seeing the witnesses, noting their demeanor or hearing their voices, nor of the innumerable intangible indicia that are so valuable to a trial judge in determining the veracity of the witnesses.

In Doyle v. Doyle, 52 N.D. 380, 389, 202 N.W. 860, 863, this court said:

"The trial court had the advantage of all these things, and, breathing the air of the trial, he was in an immeasurably better position to find the real facts in the case. Therefore, notwithstanding that the case is here for trial de novo, we must give some appreciable weight to the determination of the trial court." See Christianson v. Farmers' Warehouse Ass'n, 5 N.D. 438, 67 N.W. 300, 32 L.R.A. 730; Merchants' Nat. Bank of Willow City v. Armstrong, 54 N.D. 35, 208 N.W. 847; Gunsch v. Gunsch, N.D., 67 N.W.2d 311, 326.

It is admitted that Curtis Collis was a deputy sheriff, duly appointed by Louis Snider, the Sheriff of Sioux County, and that he and the sheriff were bonded by the State Bonding Fund and that a claim was properly filed against the fund. No issue is raised on the finding of the court that the action was brought against the sheriff and his deputy in their official capacities, and not as individuals. Neither is there any issue raised as to the official positions of the defendants nor that Snider and Collis were duly bonded by the State Bonding Fund. The action was tried on the theory that Collis was acting in his official capacity.

■ The evidence shows that on the evening of April 30, 1954, the plaintiff went to a liquor bar operated by Joe Danberger in the Village of Selfridge, Sioux County, North Dakota, about 8 o'clock P.M. and that except for a trip home, 3½ blocks away, to get his wife, he stayed there until shortly after midnight, drinking intoxicating liquors and visiting. Collis and his wife came there about 10:30 o'clock P.M. For a half hour or more plaintiff was sitting in a booth in which deputy Collis and others were sitting drinking and talking. Afterwards he played pool. By midnight plaintiff had become intoxicated and was standing up, leaning against the bar, sobbing and crying loud enough to be heard in the nearby booths. The plaintiff had become intoxicated in a public place and thereby violated Sec. 5–0109, NDRC 1943. Plaintiff's wife tried to get Schell to go home. He did not want to go and pushed her aside. Joe Danberger, the proprietor, then came and took plaintiff by the arm to take him out. Plaintiff resisted. Then Collis came to help Danberger. Collis had taken a few drinks but the evidence shows he was not intoxicated. As a peace officer it was the duty of Collis to preserve the peace, and arrest and take before the nearest magistrate all persons who had committed a public offense, Sec. 11–1503, NDRC 1943. When the proprietor was having trouble it was Collis' duty to relieve him of one who was violating the law. He left his game to help Danberger take the plaintiff out. Danberger and Collis, one on each side, led Schell to the door. Danberger turned back at the door and Collis helped plaintiff out to the street. Mrs. Schell followed. Collis told Mrs. Schell when they were outside that he would take Schell for a walk. She returned to the barroom. Col-

lis and one, Al Volk, then helped Schell, who was staggering to walk across a 25 foot, vacant lot between the bar and the postoffice building. Schell stopped and leaned against the side of the building. Collis put his arm around plaintiff's waist and pushed him as far as the front door of the postoffice. Plaintiff wanted to go back to the bar. Collis was attempting to get Schell to go home. He succeeded in getting plaintiff as far as the window on the east side of the front door of the post-office. Collis then told plaintiff that he would have to arrest him if he didn't go home. Collis had a right to arrest plaintiff without a warrant as he was committing a public offense in his presence, to wit: being intoxicated in a public place, Sec. 29-0615, NDRC 1943. He did not have to inform plaintiff what he was arresting him for because plaintiff was engaged in the commission of that offense, Sec. 29-0617, NDRC 1943. Then Danberger and Wingerter came up and also urged plaintiff to go home and offered to take him there. The plaintiff said: "No (using a very derogatory expression) is going to take me home." Collis was then standing in front of plaintiff, facing him. Plaintiff then deliberately kicked Collis in the crotch. Collis doubled up with pain. Plaintiff kicked again and in spite of Wingerter's attempt to stop that kick, he hit Collis in the left shoulder. Collis then holding up his left arm as a shield, partially straightened up and with his right fist struck plaintiff in the face. The left lens of plaintiff's glasses was broken and his left eye was injured. Plaintiff was pushed back against the postoffice window, breaking the glass, and fell down on his knees. Collis sat down on the sidewalk. Danberger and Wingerter assisted plaintiff, found his face bleeding and removed his glasses. Collis immediately got his wife and with her and Wingerter took plaintiff to a doctor at McLaughlin, South Dakota, and then Danberger took them to Bismarck that night to consult a specialist. In spite of all they could do plaintiff lost his eye.

The next day Collis swore out a criminal complaint against the plaintiff for aggravated assault as is provided when arrests are made without a warrant. Sec. 29-0625, ND RC 1943.

The evidence discloses that the plaintiff was trying to prevent being taken into custody by the deputy sheriff, Collis. That however, was Collis' duty as plaintiff was still violating the law by being intoxicated in a public place.

The law protects an officer who is trying to do his duty as long as he does not use more force than is necessary. In making an arrest he is under no obligation to retreat but has both the legal right and the official duty to press forward and accomplish his object by overcoming any resistance offered. 4 Am.Jur. Arrest, Sec. 77, p. 54; State v. Dunning, 177 N.C. 559, 98 S.E. 530, 3 A.L.R. 1166. If after notice of intention to arrest, the defendant either flees or forcibly resists, the officer may use all necessary means to effect his arrest, Sec. 29-0613, NDRC 1943.

Plaintiff claims that the court erred in finding that Schell was the aggressor. It is admitted, however, that plaintiff struck the first blow when he kicked Collis in the crotch. Prior to that all that Collis had done was in an endeavor to get Schell to move towards home by taking him by the arm and propelling him a few steps forward until plaintiff stopped in front of the post-office and braced himself against further advance. Then after Collis said he was going to arrest plaintiff if he did not go home Collis was standing in front of the plaintiff. While plaintiff may have thought Collis was going to take him into custody he had no reason to think that Collis was going to attack him. Up to that time Collis had been trying to take plaintiff home to avoid taking him into custody. By kicking Collis in the crotch plaintiff became the aggressor. By so doing plaintiff, without justifiable or excusable cause inflicted grievous bodily

harm upon Collis, Sec. 12–2610, 1953 Suppl. NDRC 1943. That clearly was a deliberate and intentional kick at a definite part of Collis' anatomy which ordinarily might cause him much more injury than a direct hit to the head such as Collis in return inflicted on plaintiff. There is no evidence that Collis intended to hit plaintiff in the eye. Collis testified he hit plaintiff to push him back so that he could not kick Collis anymore. If plaintiff had not been wearing glasses that blow would not have been considered unreasonable. That Collis' strike on plaintiff resulted in more serious injury was neither contemplated nor intended by Collis. The circumstances of the assault rather than the result must control. Village of Barboursville ex rel. Bates v. Taylor, 115 W.Va. 4, 174 S.E. 485, 92 A.L.R. 1093.

■ Plaintiff attacks Collis' credibility. When Collis' testimony is carefully analyzed there is nothing about it that is unreasonable or unexplainable. Besides that we have the findings of the trial judge which indicate that he believes the testimony of Collis and to that we must give appreciable weight. Furthermore, the presumption is that an officer performs his duty correctly and acts with ordinary caution and in good faith. That presumption prevails unless overcome by definite evidence to the contrary. In Throop, Pub. Off. Sec. 558, it is stated:

"The presumption is always in favor of the correct performance of his duty by an officer and every intendment will be made in support of that presumption."

In Smith v. Munroe, 84 N.Y. 354, it was said:

"It is always to be presumed that a public officer has acted with ordinary caution and in good faith. Terry v. Bleight, 3 T. [B.] Mon. [Ky.] (270) 272, 16 Am.Dec. 101. This presumption is one of law and necessarily continues until it is overcome by truth to

the contrary." See also West v. Nantz' Administrator, 267 Ky. 113, 101 S.W.2d 673. Meachem on Public Officers, Section 579.

■ Plaintiff claims that Collis used more force than was necessary. He argues that Collis struck plaintiff in a wanton, and reckless manner under the influence of intoxicating liquor and the explosive force of anger. It is urged in support of that argument that Collis should have known and seen the plaintiff was wearing glasses so that he should have been careful to avoid breaking them. This was about 12:30 A.M. on May 1st. The street in front of the postoffice had a light on the corner of each block. Such lights consisted of an electric light bulb underneath a reflector. The wattage power of each bulb is not shown and the testimony is that the lights did not completely light up the whole area of the block between them. The postoffice was located about 75 feet from the nearest light. A Hamm's Beer neon sign was suspended over the door of Danberger's bar, fifty feet on the other side of the postoffice. Even if there was some light reaching the front of the postoffice that does not necessarily mean that plaintiff's face was visible so as to show his glasses. That would depend on how his head was turned. The lenses in plaintiff's glasses were attached only to the nose piece. The rim on top of the glasses loosely followed the top edge of the lens. There was no protection whatever at the outside end or the lower part of the lens. The rims were no protection to the lens. Collis, standing in front of plaintiff, and having been kicked by him, knew where plaintiff's head was without necessarily looking at or seeing it. It would not require a blow of great force aimed at the face to slip up and push that lens into the plaintiff's eye. The glasses did not come off. The rims were not bent or damaged in any way. Only one lens was broken. While there was bleeding from the eyelid no injury to the face is shown. When Collis was hit the second time, he, from a

crouching position struck at plaintiff's head without any aim for the purpose only of pushing him away so that he wouldn't kick him any more. A blow struck in such a manner could not have much force and the condition of plaintiff's face and glasses indicate that strong force was not used. The force used must be measured by the circumstances of the blow not by the incidental results thereof. Whether Collis knew or saw the glasses is immaterial if he did not use more force than was necessary to push plaintiff back. Clearly the result of that blow was not anticipated or intended. The breaking of the glasses was an unfortunate incident of the blow. There is no evidence that Collis was intoxicated at the time, nor does the evidence warrant the holding that the blow was caused by anger alone. Mere anger on the part of Collis at the time he struck the plaintiff under the circumstances will not make such an assault unlawful. It has been so held even in a lawsuit between individuals and more latitude is allowed a public officer.

In Sanderson v. Huffman, 132 Neb. 321, 271 N.W. 870, 871, it was claimed that the defendants became angry and struck the plaintiff with a hammer in self defense. The court said:

"The fact that a defendant may lose his temper and become angry at the time of making an assault upon the person of another, which he seeks to justify as having been in self-defense, will not of itself, make an assault unlawful." See also Eisentraut v. Madden, 97 Neb. 466, 150 N.W. 627, L.R.A. 1915C, 893.

In State ex rel. Mullins v. McClung, 123 W.Va. 682, 17 S.E.2d 621, 625, suit was brought to recover on McClung's official bond as a member of the Department of Public Safety for the wrongful use of force upon the intoxicated driver of an automobile resulting in said driver's death. The court said:

"In effecting an arrest the officer is presumed to have acted in good faith. The law does not require him to be infallible. He must be a man whose faculty to exercise sound judgment is at least up to the average. It is the duty of the jury to judge whether this be true or not. If it be true, and if a conscientious, understandable mistake has been made by an officer in affecting a justifiable arrest, then there is no liability."

In Village of Barboursville ex rel. Bates v. Taylor, 115 W.Va. 4, 174 S.E. 485, 488, 92 A.L.R. 1093, suit was brought against the bond of Taylor, the tax collector of the village, because in attempting to arrest one Bates for drunkenness and disorderly conduct he fired a small teargas gun near his face and injured him so severely that he lost the sight of his left eye, the court said:

"An officer in making an arrest is presumed to act in good faith as to the extent of the force employed by him. He must not employ force carelessly or unnecessarily. If he does so and injures the accused, he will be penalized. This is a jury question but the officer is primarily the judge of the extent of the force to be employed by him under the circumstances, he will not be deemed to have exercised excessive force unless it appears that he has abused his power and authority * * his conduct must be weighed in the light of the circumstances under which he acted and not measured by subsequently developed facts. State v. Stockton, 97 W.Va. 46, 124 S.E. 509; State v. Clark, 51 W.Va. 457, 41 S.E. 204; State v. Zeigler, 40 W.Va. 593, 21 S.E. 763."

In Fossbinder v. Svitak, 16 Neb. 499, 20 N.W. 866, the court held that the plaintiff could not recover where he had been the original assailant, the first wrongdoer, and upon receiving injuries from the affray brought on by himself, transfer his cause from the battlefield to the courts. See also Taylor v. Clendening, 4 Kan. 524 [Reprint p. 452].

After carefully studying the evidence in this case we have come to the conclusion that Collis was acting in his official capacity in his dealings with the plaintiff on the evening in question; that plaintiff was violating the law by being intoxicated in a public place; that the plaintiff while wearing glasses, was trying to avoid being taken into custody by kicking Collis without cause and thus becoming the aggressor and taking the risk of what might happen; that Collis was justified in using force to overcome that resistance; that he did not use any more force than was reasonable and necessary; that the result of his blow on plaintiff was not intended or contemplated; that he is, therefore not liable for the damages caused thereby, and neither Sheriff Snider, nor the State Bonding Fund can be held for such damages. The findings of the court are on all material facts supported by the evidence, and no material error exists in its conclusions of law.

The judgment of the District Court is affirmed.

MORRIS, SATHRE, JOHNSON and BURKE, JJ., concur.