Argued February 5, affirmed April 10, petition for rehearing
denied May 21, 1963

# RICH *v.* COOPER
380 P. 2d 613

*Charles A. Phipps,* The Dalles, argued the cause for appellant. With him on the briefs were Phipps, Phipps & Dunn.

*Thomas H. Tongue,* Portland, argued the cause for respondent. With him on the brief were William M. Dale, Jr., Charles J. Strader and Hicks, Davis, Tongue & Dale, Portland.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL, GOODWIN and LUSK, Justices.

O'CONNELL, J.

This is an action for assault and battery alleged to have been committed by defendant, a police officer, in arresting plaintiff. The jury returned a verdict for defendant. Judgment was entered on the verdict. Upon plaintiff's motion the trial court granted a new trial on the ground that the court erred in instructing the jury that plaintiff's character, reputation and habit for turbulence and aggressiveness could be considered

on the question of whether plaintiff forcibly resisted defendant's efforts to arrest him. Defendant appeals from the order granting a new trial.

The facts are as follows. Defendant, a police officer of the city of Hood River, observed plaintiff run through a stop sign at one of the street intersections in Hood River at about 7:25 p.m. Defendant pursued plaintiff, sounding his siren and flashing his red light. Plaintiff, being near his home at the time, pulled over to the curb in front of his house. Defendant parked the police car behind plaintiff's automobile, got out, and, after conversing with plaintiff for awhile, concluded that plaintiff had been drinking. Defendant testified that he asked plaintiff to walk a line in the sidewalk in front of the steps leading up to plaintiff's house and plaintiff was not able to walk in a straight line. Defendant testified that he informed plaintiff that he was under arrest for driving under the influence of alcohol; that he took plaintiff by the arm and propelled him eastwardly along the sidewalk and across a parking area down to the curb near the rear door of the police car; that he attempted to put plaintiff in the back seat of the police car but plaintiff resisted, whereupon defendant struck plaintiff three times on the head with a "sap." Defendant also averred that plaintiff then lunged at him and in the struggle that followed defendant forced plaintiff face down on the pavement of a driveway near the police car. In the course of the struggle plaintiff dropped some light bulbs which he was carrying. One shattered on the driveway. According to defendant's version of the episode he eventually got plaintiff into the police car and drove him to the police station where it was discovered that plainitff's face was covered with blood. Defendant took plaintiff to the hospital for treatment.

Thereafter, they returned to the police station where plaintiff was "booked" on a charge of driving under the influence of liquor. There was evidence that just prior to the incident plaintiff had drunk several vodka highballs at the Hood River Elks Club. After leaving the Elks Club plaintiff stopped at the liquor store and purchased a fifth of vodka.

Plaintiff denied that he was under the influence of alcohol when he left the Elks Club. One witness supported this assertion and two witnesses were of the opinion that he was not under the influence immediately after the arrest. Plaintiff contends that defendant never told him that he was under arrest; that defendant ordered plaintiff to walk a straight line and that the latter asked why he should have to do so because he was home. Plaintiff testified that when defendant told him to get into the police car plaintiff said, "Let's talk this over. What is the matter with you?" At this point, defendant allegedly hit him three times on the head with the "sap" without provocation. That was the last thing that plaintiff remembered until he found himself face downward on the street with his hands over his head as defendant beat him on his head with the "sap." Plaintiff testified that he said, "Jesus Christ, Mister, cut it out," and that he did not remember anything thereafter until he regained consciousness in the hospital.

Plaintiff moved for a new trial, assigning five separate grounds in support of the motion. The first of these grounds is that the court erred in giving the following instruction:

"There has been testimony in this case pertaining to the character, reputation, and habit of plaintiff for turbulence and aggressiveness where alleged intoxication is concerned. If you find from

a preponderance of the evidence that plaintiff had such character, reputation, and habit under those circumstances, it is immaterial whether the defendant knew about it at the time of the arrest. That type of evidence may be considered by you in determining whether or not plaintiff forcibly resisted defendant's efforts to arrest him as claimed by defendant."

Defendant contends that the instruction correctly stated the applicable law.

Generally, evidence of a person's character is not admissible to prove that he engaged in certain conduct on a particular occasion.[1] To this general rule there are certain exceptions, one of which allows such evidence to be introduced in an action for assault and battery where self-defense is pleaded by the defendant. When defendant has laid a foundation for his claim of self-defense, he may introduce evidence of the plaintiff's reputation for turbulence and violence for the purpose of showing that the plaintiff was the first aggressor.[2]

Under the foregoing circumstances the evidence of the plaintiff's reputation is admissible even though the defendant had no knowledge of it at the time of the assault. Defendant contends that a police officer who injures a person resisting arrest occupies the same position as a defendant who claims self-defense. It is argued that the privilege of a private citizen to use force to protect oneself when assaulted is not essentially different from the duty of a police officer to

---

[1] McCormick, Evidence § 155, p. 325 (1954).

[2] Linkhart v. Savely, 190 Or 484, 227 P2d 187 (1951); Cain v. Skillin, 219 Ala 228, 121 So 521, 64 ALR 1022 (1929); Mong Ming Club v. Tang, 77 Ariz 63, 266 P2d 1091 (1954); Brown v. Simpson, 293 Ky 755, 170 SW2d 345 (1943); Davenport v. Silvey, 265 Mo 543, 178 SW 168 (1915).

use force necessary to effect an arrest and that the plaintiff's reputation for turbulence and violence is equally relevant in both situations.

■ The requirement of relevancy is satisfied, but relevancy is not the only factor determining the admissibility of evidence of reputation. Under the general rule such evidence is excluded because its relevancy is outweighed by the harm which is likely to result from its use. As Wigmore puts it, "a doctrine of Auxiliary Policy * * * operates to exclude what is relevant,—the policy of avoiding the uncontrollable and undue prejudice, and possible unjust condemnation, which such evidence might induce."⑨ I Wigmore, Evidence § 56, p. 454 (3d ed 1940). However, the evidence is admissible as an exception to the general rule if the danger of the prejudicial use of the evidence is outweighed by other considerations. For example, an exception exists where the defendant is charged with murder and alleges that he was forced to kill in self-defense. Evidence that the deceased was a person of violent disposition would be relevant to show that he was the first aggressor. It is felt that defendant should be permitted to show that he acted to protect himself from a person who had habits of violence where his life or liberty is at stake. The exception was extended to civil cases of assault, although the reason for permitting defendant to explain his conduct in such cases is less compelling. The reason for extending the exception to civil actions for assault

---

⑨ The dangers of using evidence of reputation are more specifically described in Wigmore's treatment of the subject in I Wigmore, Evidence § 56 (3d ed 1940): (1) Each trial would resolve itself into a question of which party could offer more character witnesses; (2) trials would be intolerably tedious and long; and (3) its nature is merely opinion, in which matters men are easily influenced by prejudice and bias.

and battery is not adequately explained. McCormick, Evidence § 159, p. 339 (1954) states that "probably there is in these cases a special need even beyond that in most cases of charges of crime in civil actions, for knowing the dispositions of the parties." Perhaps the exception was extended to civil cases of assault and battery not so much as a matter of need but rather as a way of giving recognition to the strong tradition that a man has a right to use force before he retreats from an aggressor. If we are to extend the exception further to embrace cases such as we have before us, we must find some equivalent consideration of policy warranting the use of reputation evidence.

The evidence of plaintiff's reputation is not sought to be used to show that he was the first aggressor and that defendant was forced to act in the face of danger. Defendant wishes to use the evidence to support an inference that a man is more likely to resist arrest when he has a violent disposition. In both cases, the defendant seeks to use the evidence to justify his conduct in injuring the plaintiff; in one case to show that he was justified in using force to defend himself, and in the other case to show that he was justified in overcoming resistance to arrest. The exception in self-defense cases might be rested upon the ground suggested above, as we have suggested. However, the question here is not whether the self-defense exception is sound but whether we should add another exception to the exclusionary rule in cases involving resistance to arrest. We see no reason for doing so. It would be helpful to police officers, in defending charges of injury incident to an arrest, if they were permitted to use reputation evidence to support the contention that the arrest was resisted. And it may be said that a police officer should not be inhibited in

carrying out his duty by the prospect of obstacles of proof. But we see no special need for the exception in spite of this policy consideration. As we shall point out below, a police officer who makes an arrest has the benefit of a presumption that he acted in good faith in determining the amount of force necessary to make the arrest. This evidentiary aid is sufficient to serve the policy noted.

■ We hold that evidence of reputation was not admissible in the present case and that the court correctly granted the motion for a new trial.

The second ground urged in support of the motion for a new trial was that the court erred in giving the following instruction:

> "Where physical facts are in direct conflict with the testimony of a witness, you are to entirely disregard the testimony of the witness as either a mistake or a falsehood and accept the physical facts as being true."

Plaintiff testified that defendant struck him when they were at a point directly in front of his house. He also testified that he was carrying three light bulbs and a bottle of vodka at that time. One of the light bulbs was broken. When plaintiff was asked on cross-examination when the light bulb was broken he said, "Evidently it happened in front of the house." Plaintiff introduced photographs taken by the sheriff of Hood River county after the incident which showed the surface of the driveway approximately 20 to 25 feet east of the place where plaintiff claimed he was struck by defendant. The photographs showed that on the surface of the driveway there was a splotch of blood, some glass from a broken light bulb, and two buttons which apparently were from plaintiff's shirt. Defend-

ant argues that these physical facts show incontrovertibly that plaintiff was not struck directly in front of his house and that, therefore, defendant was entitled to the instruction given.

We do not regard this as an appropriate case for the application of the so-called incontrovertible physical facts rule. The presence of a splotch of blood on the driveway could be consistent with plaintiff's assertion that he was struck approximately 20 feet away. The presence of the broken glass and buttons are not as readily explained if plaintiff's version of the incident is accepted. But plaintiff could have been first struck in front of his house and thereafter struck again in the area of the driveway. After being struck in front of his house, he may have staggered 20 feet and then dropped the light bulbs. Other explanations consistent with plaintiff's assertion are possible. The incontrovertible physical facts instruction is appropriate only where the facts relied upon conflict irreconcilably with the testimony of the witness.[④] That is not the case here.

As a further ground for the motion for a new trial it is asserted that the court erred in giving the following instruction:

"When making an arrest, a police officer is presumed to act in good faith in determining the amount of force to be used. In making the arrest of a person or in preventing his escape, a police officer may exert such physical force as is reasonably necessary on the one hand to effect the arrest by overcoming the resistance he encounters, if any, or, on the other hand, to subdue the efforts, if any, of the individual to escape."

[④] Oregon Motor Stages v. Portland Traction Co., 198 Or 16, 255 P2d 558 (1953); Cameron v. Goree, 182 Or 581, 189 P2d 596, 605 (1948); Van Zandt v. Goodman, 181 Or 80, 179 P2d 724, 725 (1947).

Plaintiff contends that there is no presumption that a police officer acted in good faith in determining the amount of force to be used in making an arrest. Such a presumption is recognized in other jurisdictions.[5] Plaintiff argues, however, that it is "well established" in Oregon that there are no disputable presumptions except those established by ORS 41.360. We have found no Oregon case which expressly holds that all presumptions in this state are statutory. *Wyckoff v. Mutual Life Ins. Co.*, 173 Or 592, 147 P2d 227 (1944) and *Judson v. Bee Hive Auto Service Co.*, 136 Or 1, 294 P 588, 297 P 1050, 74 ALR 944 (1931) contain language which might be so interpreted, but in neither case is it clear that the Oregon statutes are construed as precluding the recognition of disputable presumptions not enumerated in the statute.[6]

■■ It seems clear that ORS 41.360 was not intended by the legislature to constitute an exhaustive list of all possible rebuttable presumptions. As Mr. Justice ROSSMAN pointed out in his special concurring opinion in *Bunnell v. Parelius*, 166 Or 174, 190, 111 P2d 88

[5] West v. Nantz' Administrator, 267 Ky 113, 101 SW2d 673, 678 (1937); State v. Nolan, 354 Mo 980, 192 SW2d 1016, 1021 (1946); State v. Pugh, 101 N C 737, 7 SE 757 (1888); Schell v. Collis, 83 NW2d 422, 426 (N D 1957); State ex rel Mullins v. McClung, 123 W Va 682, 17 SE2d 621 (1941); O'Brien v. Snodgrass, 123 W Va 483, 16 SE2d 621, 624 (1941); Thompson v. Norfolk & W. Ry. Co., 116 W Va 705, 182 SE 880, 884 (1935); Barboursville ex rel Bates v. Taylor, 115 W Va 4, 174 SE 485, 92 ALR 1093 (1934).

[6] In Bunnell v. Parelius, 166 Or 174, 183, 111 P2d 88 (1941), a concurring opinion by Lusk, J. regards the Judson case as holding "that in this state the only presumptions are those enumerated in the statute." In a special concurring opinion in the same case, the contrary view is taken by Rossman, J.

In Davis v. Hearst, 160 Cal 143, 116 P 530 (1911), the California statute which is similar to ORS 41.360 appears to have been construed as an exclusive enumeration of the presumptions in that state.

(1941), "Our statute, by preceding the enumeration with the words 'The following are of that kind', indicates that the enumeration is only a partial compilation of the disputable presumptions." We now expressly hold that our statutes do not preclude us from recognizing disputable presumptions other than those enumerated in the statute. Further, we adopt the rule announced in the cases recognizing the presumption that a police officer acts in good faith in determining the amount of force to be used in making an arrest.[7]

■ The instruction in the present case was given as follows: "When making an arrest, a police officer is presumed to act in good faith in determining the amount of force to be used." This instruction correctly stated the law and defendant was entitled to have it given. It is not necessary for us to decide whether the facts of this case are within the presumption recognized in ORS 41.360 (1) (the presumption that "A person is innocent of crime or wrong") or ORS 41.360 (15) (the presumption that "Official duty has been regularly performed").[8]

In cross-examining defendant plaintiff offered in evidence a leaden "sap" which was similar to the one used by defendant upon plaintiff. Defendant differentiated the exhibit from the sap used by him on the ground that his sap had a longer handle and was "a lot more limber." Defendant objected to the exhibit on the ground that it was not the sap used by defendant. The objection was sustained.

■ It is stated generally that the admissibility

---

[7] See cases cited in Note 5.
[8] The latter presumption "has been applied to acts of almost every class of officers." 1 Jones, Evidence § 45, p. 78 (5th ed 1958). Dillon v. Haskell, 78 Cal App2d 814, 178 P2d 462 (1947); West v. Nantz' Administrator, 267 Ky 113, 101 SW2d 673 (1937); Schell v. Collis, 83 NW2d 422 (N D 1957).

of demonstrative evidence is within the discretion of the trial court. However, this does not mean that the trial court may arbitrarily exclude such evidence. If the evidence is material and relevant, it must be received unless there is some reason for excluding it.⑧ The evidence may be excluded because it may produce undue prejudice, confuse the jury, or if for some other specific policy reason the harm which might result from its reception may outweigh the probative value of the evidence.

 If plaintiff had offered in evidence a sap of exactly the same type as that used by defendant, the trial court would have erred in excluding it under the circumstances existing in the present case.⑨ The same would be true if the sap offered was not exactly the same but was not materially different, having in mind the purpose for which the exhibit was offered. The fact that the sap used by defendant had a longer handle and was "more limber" would not, it would seem, constitute a material difference which would warrant the exclusion of the exhibit. Other differences, such as the relative hardness or sharpness of the two instruments, could be material. Unless these differences are shown, there would be no reason for excluding the exhibit under the facts appearing in the transcript of this case. The trial court's discretion to receive or reject demonstrative evidence is broad and its exercise will not be disturbed on appeal unless it clearly appears arbitrary. Plaintiff has the right to have the exhibit received upon a retrial of the present cause, unless it

---

⑧ IV Wigmore, Evidence, § 1151, p. 240 (3d ed 1940); McCormick, Evidence § 179, pp. 385-86 (1954).

⑨ Cincinnati N.O. & T.P. Ry. v. Duvall, 263 Ky 387, 92 SW2d 363, 366 (1936); 20 Notre Dame Law 414, 416 (1945).

is shown that there is a material difference between the exhibit and the sap used by defendant.

The judgment of the lower court is affirmed.

PERRY, J., specially concurring.

I concur in the result reached by the majority, but I cannot agree with their statement that "If plaintiff had offered in evidence a sap of exactly the same type as that used by defendant, the trial court would have erred in excluding it under the circumstances existing in the present case."

Duplicates of originals may be used when it appears to be necessary to properly describe some article which is "rare and difficult to describe," or where the nature and properties of an article itself require consideration by a jury, or where, as with models, the model tends to explain how an event may have occurred. *Murray v. Firemen's Ins. Co.*, 121 Or 165, 254 P 817; *Perringer v. Lynn Food Co.*, (Mo App 1941) 148 SW2d 601; See also, 32 CJS 456, 457, Evidence, §§ 605-6, pp 456, 457.

From what has just been stated, then, the trial court's discretion in permitting or denying the admission of duplicates also lies in determining whether or not such duplicates will materially aid a jury in its determination of the facts relevant to the issues presented. Thus, if an article is simple of description so that a person of ordinary understanding would have no difficulty in understanding the qualities of such article by oral description, it cannot be said a court has abused its discretion in refusing the admission of a duplicate article offered.

In my opinion, any person of ordinary understanding would comprehend the nature of a "sap" from an oral description. Therefore, this court ought not to

invade the province of the trial court and determine as a matter of law that in all instances the trial court must admit exact duplicates unless they "may produce undue prejudice, confuse the jury, or if for some other specific policy reason the harm which might result from its reception may outweigh the probative value of the evidence."

Mr. Justice Lusk joins in this specially concurring opinion.